411 S.E.2d 261

**Terrence L. JOY, Sheila Rae Joy, and Brooks A. Joy, Plaintiffs Below,**

v.

**CHESSIE EMPLOYEES FEDERAL CREDIT UNION, Defendant Below.**

No. 20121.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Nov. 1, 1991.

David A. Jividen, James B. Stoneking, Bordas & Bordas, Wheeling, for plaintiffs.

Jack C. Barr, Barr & James, Keyser, for defendant.

NEELY, Judge:

In this case, the Circuit Court of Mineral County has certified the following questions to us:

1. Does the 1987 version of W.Va. Code § 38–1–4 apply to a situation where notice of trustee's sale was published on July 26, August 2, and August 9, 1989, after the effective date of the 1987 statute?

2. Does the 1987 version of W.Va. Code § 38–1–4 require notice of trustee's sale by certified mail on the grantor of the deed of trust at least twenty (20) days prior to the date of the sale?

3. Does W.Va.Code, Chapter 46A, West Virginia Consumer Credit and Protection Act, specifically W.Va.Code § 46A–2–106, which gives a consumer a right to cure default, apply to a loan transaction entered into in the State of Maryland and a deed of trust on property located in the State of West Virginia, where the legislature specified certain exceptions to the applicability of the Chapter, and such a situation does not fall within the exceptions?

4. Do the laws of the State of Maryland or the laws of the State of West Virginia govern as to the loan agreement entered into in the State of Maryland with a deed of trust on property located in the State of West Virginia securing that loan?

We answer the certified questions as follows:

1. Yes;

2. No;

3. No;

4. The laws of the State of Maryland govern the loan agreement.

### I.

Terrence L. Joy and Sheila Ray Joy owned some land in Mineral County, West Virginia which they used as security for a $46,500 loan from the Chessie Employees Federal Credit Union. Mr. and Mrs. Joy, along with Brooks A. Joy, Terrence Joy's father, as co-signer, entered into the loan agreement and executed the deed of trust at a Chessie office in Maryland on 8 January 1987. By 1989, the Joys fell behind on their payments, and Chessie began foreclosure proceedings. Mr. and Mrs. Joy claim that they notified Chessie their payments would be late and that Chessie assured them it would accept the late payments. Chessie, on the other hand, claims that the Joys were regularly late in making payments and that it told them continued late payments would lead to foreclosure. Beginning 26 July 1989, the trustee under the deed of trust published a notice of trustee's sale in the *Mineral County Tribune* for three weeks. The trustee also mailed (by certified mail, return receipt requested) notice to the Joys on 24 July 1989, which notice the Joys received on 27 July 1989. On 11 August 1989, the Joys' home was sold for $46,500, an amount that both parties agree was significantly below property's appraised value.

The circuit court found that the 1985 version of *W.Va.Code*, 38–1–4 applied to the deed of trust, but that if the 1987 version applied, the statute did not require 20 days notice to the Joys. The court also found that *W.Va.Code*, Chapter 46A, the Consumer Credit and Protection Act, did not apply to the loan between the Joys and Chessie and that Maryland law controlled the interpretation of the note and loan. The circuit court, thereafter, certified the four questions stated above.

### II.

The legislature amended *W.Va.Code*, 38–1–4 in 1987.[1] Chessie claims that the 1987 version of the statute cannot be applied to

---

1. *W.Va.Code*, 38–1–4 [1987] provides:

Unless property is to be sold under a deed of trust executed and delivered prior to the first day of July, one thousand nine hundred eighty, which contains a provision waiving the requirement of published notice, the trustee shall publish a notice of a trustee's sale as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be the county where the property is located: Provided, That any notice of sale published since the first day of July, one thousand nine hundred eighty, and prior to the effective date of this section [June 9, 1987], shall be deemed to have met the requirements of the section if such were published as Class II legal advertisements, in compliance with the provisions of article three, chapter fifty-nine of this code, in that by the enactment of the acts of the Legislature, regular session, one thousand

a deed of trust executed before the effective date of the statute even if the foreclosure proceeding takes place after the effective date of the statute.

nine hundred eighty, the Legislature intended that all notice of sales pursuant to trust deeds were to have been published as Class II legal advertisements.

Except as expressly provided in this section, no trust deed shall waive the requirements of publication of notice required by this section.

In all cases, a copy of such notice shall be served on the grantor in such trust deed, or his agent or personal representative, by certified mail, return receipt requested, directed to the address shown by the grantors on the deed of trust or such other address given to the beneficiary of said trust deed or said beneficiary's agent or assignee in writing by the said grantor subsequent to the execution and delivery of the trust deed and notice shall be deemed complete when such notice is mailed to the aforesaid address, notwithstanding the fact that such mail may be returned as refused or undeliverable and shall be served by certified mail, at least twenty days prior to the sale, upon any subordinate lienholder who has previously notified the primary lienholder by certified mail of the existence of a subordinate lien. Every trust deed shall state the address to which such notice shall be mailed.

Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property or both conveyed thereby; and (f) the terms of sale.

Notice to a subordinate lienholder shall be complete when such notice is mailed in accordance with the provisions of this section, directed to the address of the subordinate lienholder as provided by such subordinate lienholder in the notice of existence of a subordinate lien.

The provisions of this section relating to the methods of serving notice are not exclusive. In addition to, but not in lieu of, any service of notice required by the provisions of this section, service of such notice may be also made by any other method authorized for service of original process in the circuit courts of this state by statute or by the rules of civil procedure for trial courts of record.

An individual who purchases property at a trustee's sale is under no duty to ascertain whether notice was given to subordinate lienholders in accordance with the provisions of this section, and such right, title and interest as the purchaser may acquire shall not be affected by defects in such notice or the service thereof, if the purchaser is otherwise a bona fide purchaser for value.

*W.Va.Code*, 38–1–4 [1985] provides:

Unless property is to be sold under a deed of trust executed and delivered prior to the first day of July, one thousand nine hundred eighty, which contains a provision waiving the requirement of published notice, or the property to be sold is in the opinion of the trustee of less value than two thousand dollars, the trustee shall publish a notice of a trustee's sale as a Class III legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be the county where the property is located. If in the opinion of the trustee the property is of less value than two thousand dollars, such notice of sale shall be posted at least twenty days prior thereto at the front door of the courthouse of the county in which the property is to be sold, and at three other public places in the county, one of which shall be as near as practicable to the premises to be sold if the sale is of real estate. In all cases, whether the notice is published or not, a copy of such notice shall be served on the grantor in such trust deed, or his agent or personal representative, if he or they are within the county, at least twenty days prior to the sale, unless service of such notice be expressly waived by the grantor in any such trust deed; and shall be served by certified mail, at least twenty days prior to the sale, upon any subordinate lienholder who has previously notified the primary lienholder by certified mail of the existence of a subordinate lien: Provided, That notice need not be given to a subordinate lienholder for sales for which notice has been posted or published prior to the effective date of this section. Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property or both conveyed thereby; and (f) the terms of sale: Provided, however, That except as expressly provided in this section, no trust deed shall waive the requirements of publication of notice as required by this section. Notice to a subordinate lienholder shall be complete when such notice is mailed in accordance with the provisions of this section, directed to the address of the subordinate lienholder as provided by such subordinate lienholder in the notice of existence of a subordinate lien.

An individual who purchases property at a trustee's sale is under no duty to ascertain whether notice was given to subordinate lienholders in accordance with the provisions of this section, and such right, title and interest as the purchaser may acquire shall not be affected by defects in such notice or the service thereof, if the purchaser is otherwise a bona fide purchaser for value.

■ Although the retroactive application of some laws would violate due process, we have consistently held that statutory changes that are purely procedural in nature will be applied retroactively. *Pnakovich v. SWCC,* 163 W.Va. 583, 259 S.E.2d 127 (1979). Purely procedural changes do not impair the reliance interests of the parties. As we stated in *Pnakovich:*

> In determining whether a statute should be applied retroactively perhaps the most fundamental principle to which we look is reliance since a person should be able to plan his conduct with reasonable certainty. The traditional analysis invoked in determining the legitimacy of a statute's application is whether the statute abrogates a "vested" right. Since the vested right analysis tends to be as conclusory as the substantive/procedural analysis the better test is whether the individual has changed his position in reliance upon existing laws, or whether the retrospective act defeats the reasonable expectations of the parties it affects. (Footnotes omitted.)

*Pnakovich,* 163 W.Va. at 589, 259 S.E.2d at 130.

■ For some statutes, distinguishing between substantive changes and procedural changes is difficult. However, this case involves a statutory amendment that merely changed the procedure by which a creditor can foreclose on a deed of trust. The procedures effected are a part of the foreclosure process—which in this case took place after the effective date of the 1987 amendments. Chessie certainly did not modify its position in reliance on the statutory amendments, nor did the amendments affect the initial reasonable expectations of the parties. Because the amendments to *W.Va.Code,* 38–1–4 were procedural, the 1987 version of the statute applies in this case.

### III.

The Joys contend that the 1987 amendments do not affect the required 20 day statutory notice. They claim that the legislature intended to make foreclosure more difficult and, therefore, would not have removed the 20 day requirement. The plain language of the statute is at odds with the Joys' contention. *W.Va.Code,* 38–1–4 [1985] provided:

> In all cases, whether the notice is published or not, *a copy of such notice shall be served on the grantor* and such trustee, or his agent or personal representative, if he or they are within the county, *at least 20 days prior to the sale, unless service of such notice be expressly waived by the grantor* and any such trustee; and shall be served by certified mail, *at least 20 days prior to the sale,* upon any subordinate lienholder.... [Emphasis added.]

The same portion of *W.Va.Code,* 38–1–4 [1987] provides:

> In all cases, *a copy of such notice shall be served on the grantor* and such trustee, or his agent or personal representative, by certified mail, return receipt requested, directed to the address shown by the grantors on the deed of trust ... and notice shall be deemed complete when such notice is mailed to the aforesaid address, ... and shall be served by certified mail, *at least 20 days prior to the sale,* upon any subordinate lienholder.... [Emphasis added.]

■ As part of the 1987 amendment, the legislature removed the 20 day requirement for notice to the grantor. Removal of the 20 day requirement, however, does not allow the trustee to mail notice to the grantor whenever he chooses. When a contract sets no firm time for its completion, a reasonable time is implied. *Maze v. Bennett,* 114 W.Va. 169, 171 S.E. 249 (1933). Similarly, when a statute mandates that something be done, but sets no firm time requirement, we will imply a reasonable time. Notice must be given a reasonable amount of time prior to the sale, and, in this case, 18 days was reasonable notice. Notwithstanding the fact that the legislature removed the 20 day requirement, it did strengthen *W.Va.Code,* 38–1–4. Grantors may no longer waive notice. Previously, grantors could waive notice altogether; and it does not take a great deal of knowledge about the credit industry to understand that if grantors can waive notice,

creditors will make such waiver a standard part of their form agreements.

## IV.

The Joys present several reasons for this Court to apply West Virginia law to the loan agreement. They contend that because this loan was associated with a deed of trust on property located in West Virginia, the loan agreement must be judged by West Virginia law. The Joys also contend that we must apply West Virginia law in order to further the legislature's intent to protect consumers. Finally, they contend that general choice of law analysis favors the application of West Virginia law.

The court below found, and no one disputes, that West Virginia law applies to the deed of trust in question. The loan agreement, however, was separate from the deed of trust and the money from the loan was used to finance a business—not to improve the real property. Therefore, the circuit court's decision properly protects our jurisdiction over issues involving property located in West Virginia.

The Joys' second argument seems to imply that this Court should always apply West Virginia law whenever a West Virginia consumer is involved. This application of West Virginia law would exceed the U.S. Supreme Court's "significant relationship" test (see, Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)), and it also implies that our sister states are not willing to protect consumers. We do not share this belief and will apply our general choice of law principles to this case.

Conflicts of law is often a confusing subject, and the Supreme Court's opinion in Hague offers few real guidelines. Most often in close or reasonably close cases, state courts choose to apply their own law, citing the "significant relationship" test from Hague. This case, however, is not a close one. The Joys *went to Maryland* and *contracted for a loan with a credit union located in Maryland,* the *payments on which were to be made in Maryland.*

As we stated in *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345, 351 (1988):

Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy.

The trial court was correct in determining that the West Virginia Consumer Credit and Protection Act (*W.Va.Code,* Ch. 46A) does not apply in this case because choice of law principles dictate that the law of Maryland control the loan agreement. Because it is unnecessary, we do not address here the jurisdictional exceptions found in *W.Va.Code,* 46A-1-104 [1979].

## V.

For the foregoing reasons, the certified questions are answered.

Certified questions answered.