**Dorothy L. POLIS and Marshall G. Jarrell, Plaintiffs,**

v.

**AMERICAN LIBERTY FINANCIAL, INC., a corporation, Creve Coeur Mortgage Associates, Inc., a corporation, Citifinancial Mortgage Company, Inc., successor in interest to Associates Home Equity Services, Inc., a corporation, Defendants.**

No. CIV.A. 3:02–0514.

United States District Court,
S.D. West Virginia,
Huntington Division.

Dec. 4, 2002.

Bren J. Pomponio, Mountain State Justice, Inc., Charleston, WV, for plaintiffs.

Daniel J. Konrad, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for American Liberty Financial, Inc., defendant.

Thomas E. Scarr, Michael A. Frye, Michael E. Estep, Jenkins, Fenstermaker, PLLC, Huntington, WV, Robert L. Devereux, Joseph F. Devereux, Devereux Murphy LLC, St. Louis, MO, for Creve Coeur Mortgage Assoc., Inc., defendants.

J. Rudy Martin, Charles D. Dunbar, Jeffrey G. Wilhelm, Jackson & Kelly, Charleston, WV, for Citifinancial Mortgage Co., Inc., defendant.

## ORDER

CHAMBERS, District Judge.

Currently pending before the Court are motions to dismiss filed by Defendant Citifinancial Mortgage Company, Inc. (hereinafter Citifinancial) and Defendant Creve Coeur Mortgage Associates, Inc. (hereinafter CCM). In its motion, CCM adopts and incorporates by reference four of the arguments made by Citifinancial. In addition, CCM seeks to dismiss a claim by Plaintiffs Dorothy L. Polis and Marshall G. Jarrell that CCM engaged in the unauthorized practice of law as contained in Count V of the Amended Complaint. By Order entered on October 22, 2002, the Court granted Plaintiffs' motion to dismiss Count V with prejudice. Therefore, the Court **DENIES** as moot CCM's motion to dismiss this claim against it. As to the remaining arguments made by Defendants Citifinancial and CCM, the Court **GRANTS in part** Defendants' motion to dismiss Count I and **DENIES** Defendants' motion to dismiss the remaining counts.

## I.

### STANDARD OF REVIEW

In moving to dismiss Plaintiffs' Amended Complaint, Defendants Citifinancial and CCM attached various exhibits in support of their arguments. In their Response, Plaintiffs also attached exhibits. Pursuant to Rule 12(b)(6), when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Fed.R.Civ.P.* 12(b)(6), in part. As the Court has reviewed the attachments submitted by the parties and finds them relevant to the arguments they have made, the Court will treat Defendants' motions as motions for summary judgment.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In light of this standard, the Court now turns to the case at hand.

## II.

### DISCUSSION

To begin, the Court must consider the facts of this case in the light most favorable to Plaintiffs. In their Amended Complaint, Plaintiffs assert that in or around the Fall of 2000 they were solicited by Defendant American Liberty Financial, Inc. (hereinafter American Liberty) to apply for a home equity loan. The advertisement directed Plaintiffs to contact Ron Shoop at American Liberty's office in Huntington, West Virginia. Plaintiffs, whose house is located in Ashland, Kentucky, contacted Mr. Shoop and came to West Virginia and completed an application for a loan on or about October 10, 2000. Plaintiffs claim that they did not receive any papers at that time but were told that the annual percentage rate on the loan was fixed at 10%. On or about October 24, 2000, Plaintiffs went back to American Liberty's office to sign several other documents and close on the loan. Plaintiffs state that they again did not receive any copies of the documents.

Plaintiffs assert that several weeks after the closing they received a letter informing them that the servicing of their loan was being transferred to Associates Home Equity Services, Inc. Attached to this letter were copies of the notice of right to cancel, the Truth In Lending disclosure statement, the mortgage, and the note, which did not have a prepayment penalty rider. Plaintiffs claim these were the first papers they were given regarding the loan. In 2001, Plaintiffs state that they attempted to refinance the loan and then first learned of a five year prepayment penalty of 2%. Plaintiffs further assert that the interest rate on the loan was 12.45%, not the 10% quoted by Mr. Shoop, and they were charged certain fees associated with the loan that were neither reasonable or bona fide. Upon learning of the prepayment penalty, Plaintiffs claim they contacted Defendant Citifinancial, which gave them copies of several documents including a copy of the prepayment penalty rider.

On February 22, 2002, Plaintiffs claim they gave notice to Defendant Associates Home Equity Services and Defendant Citifinancial that they were cancelling the

transaction and directed that all future communications be made to their counsel. Following the notice, Plaintiffs claim that no action was taken by Defendants within the twenty day time period prescribed by 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23.[1] Thereafter, Plaintiffs claim that Defendant Citifinancial, which had assumed the loan, engaged in abusive debt collection tactics. As a result, Plaintiffs filed suit in the Circuit Court of Cabell County, West Virginia, and Defendants removed to this Court.

In Count I of the Amended Complaint, Plaintiffs assert that Defendant CCM violated the Truth in Lending Act ("TILA") (Title I of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*), as implemented by Federal Reserve Board Regulation Z, 12 C.F.R. § 226, by failing to make certain disclosures in a timely manner and by failing to give two copies of the notice of recission and one copy of the disclosure statement to each Plaintiff. *Amended Complaint* ¶ 16. Defendants argue, how-

ever, that because Plaintiffs closed on their loan on October 24, 2000, and did not file the present action until May 3, 2002, their claim under TILA is barred by the statute of limitations. Specifically, Defendants cite 15 U.S.C. § 1640(e) which provides, in part, that "[a]ny action under this section may be brought ... within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). *See In re Smith,* 737 F.2d 1549, 1552 (11th Cir.1984) (stating "[t]o bring an affirmative action against a creditor for statutory damages, the debtor must bring the action 'within one year from the date of the occurrence of the violation'.... The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations" (citations and footnote omitted)).

In their Response, Plaintiffs concede that the statute of limitations for seeking the statutory penalties against Defendants has expired. However, Plaintiffs argue that they are not barred from

---

**1.** Section 1635(b) provides, in part:

Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.
15 U.S.C. § 1635(b), in part. Section 226.23(d) further provides, in part:

(2)Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
12 C.F.R. § 226.23(d), in part.

seeking equitable relief in the form of recoupment or a setoff if Defendants seek repayment of the debt. The Amended Complaint seeks statutory and actual damages as well as equitable relief. Given these facts, the Court **GRANTS** Defendants' motion to dismiss the claim insofar as Plaintiffs seek statutory and actual damages. Plaintiffs will be permitted to raise their argument that they are entitled to equitable relief.

Citifinancial next argues that it is merely an assignee of the subject contract and, therefore, cannot be held liable under TILA in Count I or II of the Amended Complaint.[2] Plaintiffs contest Citifinancial alleged status as an assignee and even claim that the Defendants engaged in a joint venture and conspiracy to violate Plaintiffs' rights under the consumer laws cited. Because discovery has not even begun, the Court finds Citifinancial's argument in this regard is premature. Likewise, the Court finds it premature to dismiss Count II on the grounds that Plaintiffs allegedly signed the Rescission Notice. Defendant argues that a written acknowledgment by Plaintiffs that they received the disclosure is "conclusive proof" of delivery of the required disclosures in a claim against an assignee. See 15 U.S.C. § 1641(b). However, § 1635(c) provides that "written acknowledgment of receipt of any disclosures ... does no more than create a rebuttable presump-

tion of delivery thereof." 15 U.S.C. § 1635(c). Citifinancial's status will determine which statute applies. Thus, as it may be merely a "rebuttable presumption," the Court will not award judgment in favor of Citifinancial without giving Plaintiffs the opportunity to conduct discovery on the matter. Similarly, it is premature for the Court to decide whether, as argued by Defendants, Plaintiffs failed to make a proper tender or reasonable assurances of a tender with their notice of recession.

Defendants next contend that Counts III, IV, V, VI, and VIII of the Amended Complaint must be dismissed because the West Virginia Consumer Credit and Protection Act (the WVCCPA) does not apply to Plaintiffs who are residents of the State of Kentucky.[3] Specifically, Defendants points to West Virginia Code § 46A–1–104(1) of the WVCCPA which provides:

This chapter applies if a consumer, *who is a resident of this state,* is induced to enter into a consumer credit sale made pursuant to a revolving charge account, to enter into a revolving charge account, to enter into a consumer loan made pursuant to a revolving loan account, or to enter into a consumer lease, by personal or mail solicitation, *and the goods, services or proceeds are delivered to the consumer in this state, and payment on such account is to be made from this state.*[4]

---

**2.** In Count II, Plaintiffs assert that Citifinancial failed to take appropriate action within the twenty day time period after Plaintiffs gave notice of recession.

**3.** As previously mentioned, Count V was dismissed by Order entered on October 22, 2002. In addition, Count VIII alleges a violation of the Equal Credit Opportunity Act, not the WVCCPA. The "Joint Venture" allegation is made in Count IX. Although Count IX does not specifically make an allegation under the WVCCPA, it does allege that Defendants acted in a joint venture and "conspired to commit

the unlawful acts, or lawful acts by unlawful means, hereinbefore and hereinafter alleged, and each is responsible for all acts alleged herein." *Amended Complaint* ¶¶ 59 & 60.

**4.** A consumer is defined as "a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease." W. Va.Code § 46A–1–102(12). A consumer loan is defined as:

a loan made by a person regularly engaged in the business of making loans in which:

W. Va.Code § 46A–1–104(1) (emphasis added). In addition to Plaintiffs' residency in Kentucky, Defendants claim that the WVCCPA should not be applied because the settlement occurred in Columbus, Ohio;[5] the real estate securing the loan is located in Boyd County, Kentucky; the proceeds of the loan were delivered to Plaintiffs in Kentucky; and the Mortgage explicitly provides that the law of Kentucky shall apply.

■ In their Response, Plaintiffs argue that Defendants misinterpret the Act and give it too narrow a construction. Plaintiffs claim § 104 was drafted in a way to make it clear that West Virginia law would control in certain circumstances if a conflict of law issue arose, but it does not limit itself only to those situations. According to Plaintiffs, interpreting § 104 to exclude all other situations or transactions would be inconsistent with the purpose of the Act and lead to an absurd result. For instance, under Defendants' analysis, the language of § 104 would make the WVCCPA apply only to situations in which a person was solicited by person or by mail. In addition, if application of the WVCCPA was restricted only to those transactions specified in § 104, it would apply only to cases involving consumer credit sales made pursuant to revolving charge accounts, revolving loan accounts, or consumer leases. In other words, the WVCCPA would not apply to any consumer loan. Moreover, the exclusions to the WVCCPA are clearly identified in § 105 and those exclusions do not limit the Act

only to West Virginia residents. Upon careful consideration, the Court agrees with Plaintiffs. There is no language in § 104 which provides it shall only apply to West Virginia residents or only to the situations covered within the statute. Instead, it merely clarifies what law will control under the circumstances delineated therein. *See Rhoades v. West Virginia Credit Bureau Reporting Serv., Inc.,* 96 F.Supp.2d 528, 533–34 (S.D.W.Va.2000) (finding § 104 does not provide that it only applies to the situations specified in the statute. Instead, it "merely clarifies coverage of Chapter 46A for ... [the] two limited contacts [contained therein], which might otherwise create choice-of-law issues. Defendants' narrow interpretation would wipe out almost all of the WVCCPA, except those relatively minor portions dealing with revolving charge accounts."). Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' claims alleging violations of the WVCCPA.

Defendants further claim that any action under West Virginia law must be dismissed because the Mortgage explicitly states that the "Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." *Mortgage* at 10, ¶ 16, in part (Citifinancial's Exhibit C). Thus, as the property is located in Kentucky, Defendants assert that Kentucky law must apply. However, as Plaintiffs indicate, the Note, which controls the terms of the loan, does not have a choice of law provision and the mortgage simply states that the *secu-*

(a) The debtor is a person other than an organization;
(b) The debt is incurred primarily for a personal, family, household or agricultural purpose;
(c) Either the debt is payable in installments or a loan finance charge is made; and
(d) Either the principal does not exceed forty-five thousand dollars or the debt is

secured by an interest in land or a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code. W. Va.Code § 46A–1–102(15).

5. Plaintiffs contest the closing occurred in Columbus and point to the fact the mortgage was clearly notarized in Huntington, West Virginia.

*rity interest* shall be governed by Kentucky law. Plaintiffs insist that because the Note was entered into in West Virginia, West Virginia law must apply.

A comparable conflicts of law issue was addressed by the West Virginia Supreme Court in *Joy v. Chessie Employees Federal Credit Union,* 186 W.Va. 118, 411 S.E.2d 261 (1991). In *Joy,* the plaintiffs used land they owned in Mineral County, West Virginia, as a security interest to obtain a loan. *Id.* at 119, 411 S.E.2d at 262. The plaintiffs entered into the loan agreement and executed a deed of trust at the defendant's office located in Maryland. *Id.* In determining whether the law of West Virginia or Maryland would apply to the loan agreement, the Court quoted its previous holding in *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988), which provides:

> "Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy."

*Id.* at 122, 411 S.E.2d at 265 (*quoting Lee,* 179 W.Va. at 768, 373 S.E.2d at 351). Utilizing these principles, the Court determined that the law of Maryland would govern the loan agreement (which was separate from the deed of trust) because the plaintiffs "went to Maryland and contracted for a loan with a credit union located in Maryland, the payments on which were to be made in Maryland." *Id.* (emphasis deleted).

■ Similarly, although the land in the present case is located in Kentucky and Plaintiffs live in Kentucky, they came to West Virginia and contracted for the loan with a lender located in this State. Applying the reasoning in *Joy* to these facts, it is clear that West Virginia law controls the Note.[6] Accordingly, the Court **DENIES** Defendants' request to dismiss the West Virginia causes of action based upon their contention that the loan is governed by the law of Kentucky.

Next, Defendants argue that Count VII should be dismissed under Rule 9(b) of the Federal Rules of Civil Procedure because Plaintiffs did not state their fraud claim with particularity. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Wright and Miller note that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed.1990) (other citations omitted)).[7]

---

**6.** Although the Court is not aware of where the monthly loan payments were sent, even if they were not sent to West Virginia, the Court finds this fact alone would not change the fact that West Virginia law will apply under the reasoning of *Joy.*

**7.** The *Harrison* court observed:

Rule 9(b) has four purposes:

First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

In this case, Plaintiffs have alleged the following in Count VII:(1) Defendant American Liberty told Plaintiffs the annual percentage rate would be 10%; (2) in reality, the loan was made at 13.4%; (3) Defendants made this misrepresentation to induce Plaintiffs to enter into the loan; (4) such misrepresentation was intentional and material; (5) in entering into the loan, Plaintiffs relied upon the representation that the interest rate would be 10%; and (5) Plaintiffs were injured as a result of the interest rate being higher than what was represented. *Amended Complaint* ¶¶ 45–51. Plaintiffs also incorporate by reference into Count VII the earlier paragraphs in the Amended Complaint which include allegations that the 10% rate information was provided to Plaintiffs by Ron Shoop, a loan agent for American Liberty, in or around October 10, 2000, at the Huntington office and that the copies of the paperwork and disclosures were withheld from Plaintiffs. Clearly, these allegations are sufficient to meet the 9(b) requirement and are not a "bare assertion" of fraud as argued by Defendants. Thus, the Court **DENIES** Defendants' motion to dismiss Count VII.

In Count VIII, Plaintiffs allege that Defendants violated the Equal Credit Opportunity Act (ECOA) by failing to provide Plaintiffs with notice of the rate change within 30 days as required by 15 U.S.C. § 1691(d)(1) [8] or provide them with a counteroffer pursuant to Regulation B, 12 C.F.R. § 202.9(a)(1)(i).[9] Defendants insist, however, that Plaintiffs failed to allege they are members of a protected class or that they have received disparate treatment as required by those provisions. Therefore, Defendants argue, Count VIII must be dismissed. As Plaintiffs point out, however, they need not allege they belong to a protected class to state a claim under § 1691(d)(1) and § 202.9(a)(1)(i) because those sections require notice of adverse actions to all consumers, not only those who belong to a protected class. *See Jochum v. Pico Credit Corp.*, 730 F.2d 1041, 1043 n. 3 (5th Cir.1984) (finding the plaintiffs did not need to state a claim of discrimination to assert a cognizable claim under § 1691(d)); *Rayburn v. Car Credit Center Corp.*, No. 00 C 3361, 2000 W.L. 1508238 (N.D.Ill. Oct.10, 2000) (holding that "[a]lthough the ECOA addresses discriminatory lending practices, discrimination is not a requisite to an actionable ECOA claim.... Section 1691(d) sets forth a notification requirement separate and apart from the statute's discrimination

A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts. *Id.* (citation omitted).

8. Section 1691(d)(1) provides:
(d) **Reason for adverse action; procedure applicable; "adverse action" defined**
(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application 15 U.S.C. § 1691(d)(1). An "adverse action" is defined in 1691(d)(6) as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6), in part.

9. Section 202.9(a)(1)(i) provides:
(a) *Notification of action taken, ECOA notice, and statement of specific reasons-*
(1) *When notification is required.* A creditor shall notify an applicant of action taken within:
(i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application[.]
12 C.F.R. § 202.9(a)(1)(i).

provisions, and ... [the plaintiff's] allegation that ... [the defendant] failed to issue a notice establishes a claim under the provision"). Thus, the Court **DENIES** Defendants' motion to dismiss Count VIII for failure to state a claim.

■ In Count X, Plaintiffs allege that, despite the fact Defendant Citifinancial knew Plaintiffs were represented by counsel, Citifinancial contacted Plaintiffs directly on several occasions. According to Plaintiffs, these contacts caused them to violate a provision of their contract with their counsel which prohibits them from communicating directly with an opposing party. Moreover, Plaintiffs claim that, during those conversations, sundry threatening and improper statements were made which caused them to suffer damages. Citifinancial argues, however, that in order to succeed on this claim, Plaintiffs must show Citifinancial's alleged activity caused the relationship between Plaintiffs and their counsel to be terminated. As the relationship has not been terminated, Citifinancial argues Count X must be dismissed. However, the Court finds no requirement under Kentucky law that a tortious interference with contract must result in a termination of a contract.[10] *See, e.g., Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 487 (Ky.1991) (stating "[u]nder Kentucky law, tort liability exists for the interference with a known contractual relationship, if the interference is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion" (citations omitted)). Moreover, upon review of the Amended Complaint, the Court finds Plaintiffs properly have stated a cause of action. Therefore, the Court **DENIES** Citifinancial's motion to dismiss Count X.[11]

■ Finally, Defendants argue that Count XI must be dismissed because Plaintiffs do not have a private right of action under Kentucky law for violations of §§ 525.070 and 525.080 of Kentucky's penal code. These sections prohibit harassment and harassing communications. As Plaintiffs indicate, however, they are granted a private cause of action under § 446.070, which provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *See also Commonwealth ex rel. Keck v. Shouse*, 245 S.W.2d 441 (Ky.1952) (applying § 446.070 to a penal statute). Moreover, the Court finds no merit to Defendants bald assertion in two footnotes that Plaintiffs have failed to plead conduct which falls within these two statutes or that, because Plaintiffs were called for a legitimate purpose (debt collection), Defendants cannot be held liable for any harassment that occurred during those conversations. Indeed, Plaintiffs specifically dispute in paragraph 72 of the Amended Complaint that the communications were made for a legitimate purpose. Therefore, the Court **DENIES** Defendants' request to dismiss Count XI.

## III.

## CONCLUSION

Accordingly, for the following reasons, the Court **DENIES** as moot CCM's motion

---

10. As noted by Plaintiffs, it appears that Kentucky law controls this cause of action because the calls were made to Plaintiffs in Kentucky.

11. Citifinancial also cursorily argues its communications with Plaintiffs were "privileged" because they contacted Plaintiffs in an attempt to collect the debt and, therefore, Count X must be dismissed. Citifinancial does not cite any legal authority for this assertion and, at this point in the litigation, the Court declines to dismiss Count X on this ground.

to dismiss Count V, **GRANTS in part** Defendants' motion to dismiss Count I, and **DENIES** Defendants' motion to dismiss the remaining counts for the reasons stated above.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.