576 S.E.2d 807

**Laura A. FINDLEY, Individually and on behalf of All Other Persons Similarly Situated, Plaintiff Below, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below, Appellee,**

**Nationwide Mutual Insurance Company, Intervenor.**

No. 30842.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 14, 2002.

Decided Dec. 6, 2002.

Concurring Opinion of Justice Starcher Dec. 13, 2002.

Concurring and Dissenting Opinion of Justice McGraw Jan. 6, 2003.

J. Michael Benninger, Esq., Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, James M. Pietz, Esq., Malakoff, Doyle & Finberg, P.C., Pittsburgh, PA, for the Appellant.

Clarence E. Martin, III, Esq., Susan R. Snowden, Esq., Ronald S. Rossi, Esq., Martin & Seibert, L.C., Martinsburg, for the Intervenor.

Mary E. Alexander, Esq., President, Jeffrey R. White, Esq., Counsel, The Association of Trial Lawyers of America, Washington, DC, William L. Frame, Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, for Amicus Curiae, The Association of Trial Lawyers of America.

Bert Ketchum, Esq., Greene Ketchum Bailey & Tweel, Huntington, for Amicus Curiae, West Virginia Trial Lawyers Association.

Catherine D. Munster, Esq., James A. Varner, Sr., Esq., Debra Tedeschi Herron, Esq., McNeer, Highland, McMunn and Varner, L.C., Clarksburg, for the Appellee.

J. Michael Weber, Esq., Dean A. Furner, Esq., Spilman Thomas & Battle, PLLC, Parkersburg, for Amici Curiae, West Virginia Insurance Federation, West Virginia Chamber of Commerce, West Virginia Manufacturers Association, West Virginia Business and Industry Council, West Virginia Bankers Association, Builders Supply Association of West Virginia, West Virginia Association of Insurance and Financial Advisors, West Virginia Automobile and Truck Dealers Association, and The Professional Independent Insurance Agents of West Virginia.

DAVIS, Chief Justice.

The appellant herein and plaintiff below, Laura A. Findley, individually and in her representative capacity [1] [hereinafter collectively referred to as "Ms. Findley"], appeals from an August 1, 2002, order entered by the Circuit Court of Barbour County in favor of the appellee herein and defendant below, State Farm Mutual Automobile Insurance Company [hereinafter referred to as "State Farm"]. By the terms of that order, the circuit court concluded that State Farm was entitled to summary judgment because (1) the vehicle in which Ms. Findley was riding at the time of the accident was not an underinsured motor vehicle, and therefore, she was not entitled to recover underinsured motorist [hereinafter referred to as "UIM"] benefits from State Farm; (2) the multi-car discount contained in the applicable State Farm policy precluded the stacking of coverages under multiple State Farm policies available to Ms. Findley; and (3) the provisions of W. Va. Code §§ 33–6–30(b–c) (2002) (Supp.2002) barred Ms. Findley's cause of action.

---

1. Although Ms. Findley originally filed her suit against State Farm individually, during the proceedings underlying this appeal, she moved for, and was granted, permission to amend her complaint to transform it into a class action proceeding. Despite this procedural posture, we will nevertheless collectively refer to the plaintiffs below and appellants herein as "Ms. Findley" to maintain consistency with the circuit court's rulings and the parties' arguments. For further discussion of the class action status of this suit, see *infra* note 10 and accompanying text.

On appeal to this Court, Ms. Findley argues that the circuit court erred by (1) retroactively applying W. Va.Code §§ 33–6–30(b–c); (2) concluding that she does not have standing to challenge, pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), State Farm's definition of an underinsured motor vehicle; (3) upholding the anti-stacking provisions contained in her State Farm motor vehicle insurance policy; and (4) denying her cross-motion for summary judgment. State Farm additionally asserts several cross-assignments of error urging the affirmance of the circuit court's rulings. Upon a review of the parties' arguments, the record designated for appellate consideration, and the parties' arguments, we affirm the decision of the Circuit Court of Barbour County. In summary, we find that (1) the provisions of W. Va.Code §§ 33–6–30(b–c) do not apply retroactively; (2) Ms. Findley cannot assert a claim for relief pursuant to our prior decision in *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000); (3) the anti-stacking exclusions contained in the State Farm policy at issue herein are valid and enforceable; and (4) Ms. Findley is not entitled to judgment as a matter of law.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts upon which this proceeding is based were found by the circuit court as follows. On March 18, 2000, Ms. Findley was riding as a passenger in a 1987 Chevrolet Cavalier, which she jointly owned with her estranged husband John Findley[2] [hereinafter referred to as "Mr. Findley"] and of which she had been given exclusive use.[3] At the time of the single car accident, Rusty Hyde, who did not own an automobile and thus had no motor vehicle insurance, was driving the Cavalier with Ms. Findley's permission. Ms. Findley was injured as a result of this accident, and recovered under the $50,000 liability provisions of Mr. Findley's State Farm policy insuring said vehicle.[4]

When these coverage limits proved to be insufficient to fully recompense her injuries, Ms. Findley attempted to also collect under the UIM provisions of this policy, as well as under the UIM provisions of two other policies of motor vehicle insurance held by Mr. Findley,[5] all of which coverage was denied by State Farm. In support of its denial of coverage, State Farm relied upon the policy definitions of UIM coverage and underinsured motor vehicle. Pursuant to this policy, "underinsured motorist coverage" is described as follows:

> [w]e will pay for damages for **bodily injury** and **property damage** an **insured** is legally entitled to collect from the owner or driver of an **underinsured motor vehicle**. The bodily **injury** or **property damage** must be caused by accident arising out of the operation, maintenance, or use of an **underinsured motor vehicle**.

An "underinsured motor vehicle" is further defined to exclude "a land motor vehicle ... insured under the liability coverage of this policy[.]"[6] Moreover, the policy in question

2. Mr. and Ms. Findley were married on November 22, 1996.

3. By order entered November 17, 1999, in connection with the Findleys' marital separation, Ms. Findley was awarded temporary relief, including the exclusive use and possession of the Chevrolet Cavalier.

4. Mr. Findley had insured the Chevrolet Cavalier with State Farm on September 26, 1991, under State Farm Policy No. 232–7297–D24–48D. The coverage limits of this policy of motor vehicle insurance included $50,000 liability coverage and $50,000 underinsured motorist (UIM) coverage. Although it does not appear that Ms. Findley was specifically named as an insured on the declarations page of this policy until April 6,

2000, she presumably was nevertheless covered thereby as Mr. Findley's spouse.

5. These additional policies of motor vehicle insurance, issued by State Farm and purchased by Mr. Findley, consisted of State Farm Policy No. 8580–C24–48, issued on June 29, 1998, and insuring a 1985 Chevrolet S10 Blazer, and State Farm Policy No. 257–9255–A30–48B, issued on January 30, 1996, and insuring a 1999 Ford E250 Van.

6. The circuit court found, with respect to this policy provision, that State Farm submitted Amendatory Endorsement 6069AG, containing such language, to the West Virginia Insurance Commissioner for approval in November, 1989. The Commissioner approved this definition of

contains an anti-stacking exclusion: "If other underinsured motor vehicle coverage issued by us to you, your spouse, or any relative applies, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."[7]

Thereafter, Ms. Findley instituted the underlying declaratory judgment action[8] against State Farm in the Circuit Court of Barbour County on November 21, 2000. Subsequently, on May 8, 2001, Ms. Findley moved to amend her complaint[9] to convert her suit into a class action proceeding;[10] the circuit court granted Ms. Findley's motion by order entered July 10, 2001. Ms. Findley then filed her First Amended Class Action Complaint on July 25, 2001. Following discovery, State Farm moved for summary judgment on February 14, 2002, and Ms. Findley cross-moved for summary judgment on April 10, 2002. On May 16, 2002, State Farm filed a second motion for summary judgment, asserting additional theories upon which it based its entitlement to relief. After a hearing on these motions, the circuit court ultimately ruled in favor of State Farm by order entered August 1, 2002, concluding that:

[1.] State Farm is entitled to the granting of its First Motion for Summary Judg-

underinsured motor vehicle in December, 1989, and this Amendatory Endorsement became effective January 1, 1990. Pursuant to the circuit court's findings of fact, "[n]o evidence has been propounded demonstrating that State Farm adjusted premiums from inclusion of these amendatory endorsements in 1989, although State Farm contends the overall premium was consistent with the policy provisions." *See infra* note 7.

7. With respect to the above-quoted anti-stacking language, the circuit court found that, on August 16, 1995, State Farm submitted to the Insurance Commissioner a form filing requisite to the incorporation of such an exclusion in its policies of motor vehicle insurance. Presumably, this language, contained in Amendatory Endorsement 6090AQ, received the Commissioner's approval. The circuit court also found that State Farm "did not decrease UIM premiums in 1995 when anti-stacking language was re-incorporated into the automobile insurance policy in Amendatory Endorsement 6090AQ, but alleges the premium charged was consistent with the policy provisions."

Furthermore, relevant to both Amendatory Endorsements at issue herein, the circuit court noted that

It is the position of the Insurance Commissioner's Office that:

a. It is the exclusive duty and responsibility of the Insurance Commissioner's Office to insure that the benefits of insurance policies are reasonable in relation to the premium charged. "Exclusions are consistent with the premiums charged when the Rates and Forms Division of the Insurance Commissioner's Office approves them."

b. In determining the appropriate premium adjustment for purposes of West Virginia Code § 33–6–31(k), numerous factors must be considered. Thus, the addition of an exclusion may quite properly *not* result in a premium reduction because the effect of the exclusion is offset by the increases produced by the other factors.

(Citations omitted).

8. Declaratory judgment actions are governed by W. Va.Code § 55–13–1, *et seq.* W. Va.Code § 55–13–2 (1941) (Repl.Vol.2000) provides

[a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

9. Ms. Findley filed her first amended complaint on November 22, 2000, wherein she sought underinsured motorist (UIM) coverage from State Farm.

10. In support of her motion to convert her suit into a class action, Ms. Findley averred

[t]his class action is brought on behalf of West Virginia State Farm policy owners and insureds as to whom State Farm has overcharged and/or denied Underinsured Motorist (UIM) coverage. For UIM coverage to be effective under West Virginia law, the insurer must offer policyholders, as part of the insurance contract, an option to purchase full, unlimited, unrestricted UIM coverage which includes a policyholder's right to reject full UIM coverage and pay lower premiums for limited UIM coverage. State Farm, however, fails to contract for UIM coverage in the manner mandated by West Virginia law. Thus, thousands of West Virginia State Farm policyholders and/or insureds have been overcharged for and/or illegally denied UIM coverage.

*See generally* W. Va. R. Civ. P. 23 (setting forth criteria for class action proceedings). See also note 1, *supra*, discussing class action status in the case *sub judice.*

ment (filed February 14, 2002), on the application of the "intra-policy setoff" provision, for the following reasons:

a. The Court finds as a matter of law that the subject vehicle is not an "underinsured motor vehicle" under the applicable insurance policy, as the definition of underinsured motor vehicle clearly and unambiguously precludes UIM coverage for a vehicle insured under the same policy for liability purposes. *See Thomas v. Nationwide Mutual Insurance Company*, 188 W.Va. 640, 425 S.E.2d [595] (1992); *Alexander v. State [Automobile] Mutual Insurance Company*, 187 W.Va. 72, 415 S.E.2d 618 (1992).

b. The definition of "underinsured motor vehicle" as contained within the applicable State Farm policy originally issued September 26, 1991 is consistent with the statutory requirements of the West Virginia Code and is in accord with public policy.

c. Moreover, as found by our state supreme court, to declare this provision invalid would "emasculate" this State's underinsured motorist statutory provisions, and, in effect, would transform the underinsured coverage into liability coverage. This finding is controlled by the West Virginia Supreme Court of Appeals rulings in *Thomas v. Nationwide Mutual Insurance Company*, 188 W.Va. 640, 425 S.E.2d 595 (1992); and *Alexander v. State Automobile Mutual Insurance Company*, 187 W.Va. 72, 415 S.E.2d 618 (1992).

d. The plaintiff's [Ms. Findley's] *Broadnax* arguments cannot be applied to this provision of the subject policy. The policy in question was issued September 26, 1991. Endorsement 6069AG received approval in December 1989 and became effective January 1, 1990, prior to issuance of the subject policy. If a challenge to the endorsement could be brought, the Court is of the opinion is could only be done by persons owing policies on January 1, 1990, alleging benefits were deleted from their policies without corresponding adjustments to premiums.

[2.] State Farm is entitled to the granting of its First Motion for summary judg-

ment on the issue of Laura Findley's stacking claim in light of the clear and unambiguous exclusion prohibiting stacking, for which John Findley received a multi-car discount.

The issue of whether Laura Findley has standing to [assert] a "Broadnax" claim is factually in dispute. However, the Court finds the "Broadnax" claim not applicable as hereinafter set forth.

[3.] State Farm is also entitled to summary judgment as a matter of law for the reasons set forth in its Second Motion for Summary Judgment as the plaintiff's cause of action is barred by the provisions of West Virginia Code § 33–6–30(b) and (c) for the following reasons:

a. West Virginia Code § 33–6–30(b) and (c) is a clarification of existing law and does not overrule *Mitchell v. Broadnax*.

b. As clarified by West Virginia Code § 33–6–30(b) and (c), nothing in *Broadnax* or West Virginia Code § 33–6–31(k) requires a *quid pro quo* premium adjustment for the incorporation of policy terms and exclusions.

c. *Broadnax* does not require an overall premium reduction if it is shown that the policy, with the exclusions, has an appropriate premium for the coverage provided.

d. As State Farm's policy language and premium rates were approved by the West Virginia Insurance Commissioner's Office prior to use, State Farm has met its statutory burden of demonstrating that the coverage afforded, including definitions and exclusions, were "consistent with the premium charged."

e. The language contained within West Virginia Code § 33–6–30(b) and (c) expresses the Legislature's intention for the same to apply to existing cases.

f. As a clarification of existing law, West Virginia Code § 33–6–30(b) and (c) is to be retroactively applied. *See Hutchens v. Progressive Paloverde Insurance Company, et al.*, [211 F.Supp.2d 788 (S.D.W.Va. 2002) ].

. . . .

[4.] The plaintiff's cross-motion for summary judgment should be denied for all of the reasons set forth above[.]

From these rulings, Ms. Findley appealed to this Court. In conjunction with her Petition for Appeal, she moved this Court to expedite its consideration thereof given that "[t]his matter will provide controlling precedent for numerous civil actions pending in circuit courts throughout the State of West Virginia, gives rise to constitutional implications regarding recent remedial legislation, and impacts thousands of State Farm insureds residing in the State of West Virginia." By orders entered October 10, 2002, we granted said motion and granted Ms. Findley's Petition for Appeal. Thereafter, Nationwide Mutual Insurance Company [hereinafter referred to as "Nationwide"], who earlier had been granted leave to appear as an Amicus Curiae to this proceeding, moved to intervene [11] herein. In so moving, Nationwide averred that it was currently defending a class action in the Circuit Court of Taylor County with issues virtually identical to those raised herein; by order entered November 12, 2002, we granted Nationwide's motion, according it intervenor status.

## II.

## STANDARD OF REVIEW

Procedurally, this matter arises as an appeal from the circuit court's grant of summary judgment to State Farm and denial of such relief to Ms. Findley. In such matters, we typically apply a plenary review to the circuit court's ruling. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Similarly, we previously have stated, and now so hold, that this Court "review[s] *de novo* . . . the denial of [a] motion for summary judgment," *Adkins v. Chevron, USA, Inc.*, 199 W.Va. 518, 522, 485 S.E.2d 687, 691 (1997) (per curiam), where such a ruling is properly reviewable by this Court. *See, e.g.*, Syl. pt. 8, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963) ("An order denying a motion for sum-

mary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable."). *See also* Section III.D., *infra.*

Also at issue in this proceeding is the circuit court's interpretation of the relevant statutory language. To this decision, we likewise employ a *de novo* standard of review. *See, e.g.*, Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."); Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

Lastly, we are called upon to interpret the pertinent portions of the State Farm policy of motor vehicle insurance upon which this proceeding is based. We recently held that "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). Therefore, we will review anew the circuit court's ruling in this regard. *See, e.g.*, Syl. pt. 1, *Appalachian Power Co.*, 195 W.Va. 573, 466 S.E.2d 424; Syl. pt. 1, *Chrystal R.M.*, 194 W.Va. 138, 459 S.E.2d 415. With these standards in mind, we proceed to consider the merits of the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Ms. Findley raises four assignments of error charging that the circuit court erred by (1) retroactively applying W. Va.Code §§ 33–6–30(b–c) (2002) (Supp.2002); (2) concluding that she does not have standing to challenge, pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), State Farm's definition of an underinsured motor vehicle; (3) upholding

---

11. *See generally* W. Va. R.App. P. 22 (establishing intervention criteria).

the anti-stacking provisions contained in her State Farm motor vehicle insurance policy; and (4) denying her cross-motion for summary judgment. In response to the issues raised by Ms. Findley, State Farm asserts cross-assignments of error in support of the circuit court's rulings, namely that the circuit court's order should be affirmed based upon (1) the filed rate doctrine; (2) Ms. Findley's failure to exhaust her administrative remedies relative to challenging State Farm's previously approved rates and forms; (3) the separation of powers doctrine; and (4) the adverse effect Ms. Findley's collateral attack on the rate making process would have on State Farm's constitutional rights. We will address each of these arguments in turn.[12]

### A. Retroactivity of W. Va. Code §§ 33–6–30(b–c)

■ Ms. Findley first contends that the circuit court erred by affording W. Va.Code §§ 33–6–30(b–c) (2002) (Supp.2002) retroactive effect rather than applying these statutory provisions prospectively. In this regard, the circuit court ruled that, "[a]s a clarification of existing law, West Virginia Code § 33–6–30(b) and (c) is to be retroactively applied."[13] To support her contentions, Ms. Findley relies upon various legislative enactments and court decisions, including the Contracts Clauses of the United States and West Virginia Constitutions,[14] legislative directives regarding retroactivity,[15] and characterization of the subject statute as a "special interpretive statute"[16] or "declaratory statute"[17]. State Farm, in rejecting Ms. Findley's arguments, likewise cites to numerous authorities to support its assertion that retroactive application of these statutory provisions does not impermissibly impair contractual rights in violation of the Contracts Clause[18] and is necessitated by the clear and unambiguous language of W. Va.Code § 33–6–30.[19] State

12. At this juncture, we wish to thank the numerous Amici Curiae for appearing in this proceeding. We will consider their arguments in conjunction with those of the parties. Likewise, we will consider the arguments of the intervenor herein, Nationwide Mutual Insurance Company, in connection with those advanced by State Farm.

13. In this regard, the circuit court also determined that "[r]etroactive application of West Virginia Code § 33–6–30(b) and (c) does not impermissibly infringe upon the constitutional Contracts Clause[.]"

14. See U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ...Law impairing the Obligations of Contracts."); W. Va. Const. art. III, § 4 (similar).

15. See W. Va.Code § 2–2–10(bb) (1998) (Repl. Vol.2002) ("A statute is presumed to be prospective in its operation unless expressly made retrospective[.]"). See also Syl. pt. 2, in part, Conley v. Workers' Comp. Div., 199 W.Va. 196, 483 S.E.2d 542 (1997) ("A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." (internal quotations and citations omitted)).

16. See 1A Sutherland on Statutory Construction § 27.4, at 632–33 (6th ed.2002 rev.) ("The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate. Where such statutes are given any effect, the effect is prospective only. Any other result would make the legislature a court of last resort." (footnotes omitted)).

17. See State ex rel. White v. Wirt County Court, 63 W.Va. 230, 245, 59 S.E. 884, 982 (1907) (Miller, J., dissenting) (indicating that "[a] declaratory statute ... put[s] an end to doubt as to what is the common law or the meaning of another statute, and ... declares what it is and ever has been" (internal quotations and citation omitted)). See also United States v. Claflin, 97 U.S. 546, 549, 24 L.Ed. 1082, 1084 (1878) ("[A] declaratory act, or an act directing how a former act shall be construed, is inoperative on the past[.]").

18. See Syl. pt. 4, Shell v. Metropolitan Life Ins. Co., 181 W.Va. 16, 380 S.E.2d 183 (1989) ("In determining whether a Contract Clause violation has occurred, a three-step test is utilized. The initial inquiry is whether the statute has substantially impaired the contractual rights of the parties. If a substantial impairment is shown, the second step of the test is to determine whether there is a significant and legitimate public purpose behind the legislation. Finally, if a legitimate public purpose is demonstrated, the court must determine whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.").

19. See United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1185 (9th Cir.2002) ("When deciding whether a statutory provision applies retroactively to pending cases, we look to the text and legislative history of the provision to determine if Congress manifested a clear intent regarding the scope of the law's applicability.").

Farm also contends that Ms. Findley cannot assert a new theory on appeal, *i.e.*, denominating W. Va.Code § 33–6–30 to be a "special interpretive statute," that she did not advance to the circuit court during the proceedings below.

Having considered both parties' arguments, we find that the issue of whether W. Va.Code §§ 33–6–30(b–c) should be applied retroactively may easily be resolved by reference to this State's statutory law and judicial precedent concerning retroactivity. Before examining the precise statute at issue before us, however, it is necessary to first briefly review the context within which such amendments were enacted.

The statute in question, W. Va.Code § 33–6–30, was amended by the Legislature following this Court's decision in *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000). In that case, we were called upon to interpret a related statutory provision, W. Va.Code § 33–6–31(k) (1995) (Repl.Vol. 1996),[20] which states that "[n]othing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged." Our interpretation of this language in *Mitchell* resulted in the following holdings:

> When an insurer incorporates, into a policy of motor vehicle insurance, an exclusion pursuant to W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996), the insurer must adjust the corresponding policy premium so that the exclusion is "consistent with the premium charged."
>
> When an insurer has failed to satisfy the statutory criteria of W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996) requisite to incorporating an exclusion in a policy of motor vehicle insurance, the enforcement of such an exclusion is violative of this State's public policy.

Syl. pts. 5–6, *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882.

Thereafter, the Legislature, in response to this Court's decision in *Mitchell*, amended W. Va.Code § 33–6–30 (2002) (Supp.2002). In relevant part, the amendatory language provides

(b) The Legislature finds:

(1) That consumers and insurers both benefit from the legislative mandate that the insurance commissioner approve the forms used and the rates charged by insurance companies in this state;

(2) That certain classes of persons are seeking refunds of insurance premiums and seeking to void exclusions and other policy provisions on the basis that insurance companies allegedly failed to provide or demonstrate a reduction in premiums charged in relation to certain terms or exclusions incorporated into policies of insurance;

(3) That historically, as a prerequisite to a rate or form being approved, neither the Legislature nor the insurance commissioner has ever required that the insurer demonstrate that there was a specific premium reduction for certain exclusions incorporated into policies of insurance;

(4) That the provisions of this chapter were enacted with the intent of requiring the filing of all rates and forms with the insurance commissioner to enable the insurance commissioner to review and regulate rates and forms in a fair and consistent manner;

(5) That the provisions of this chapter do not provide and were not intended to provide the basis for monetary damages in the form of premium refunds or partial premium refunds when the form used and the rates charged by the insurance company have been approved by the insurance commissioner;

(6) That actions seeking premium refunds or partial premium refunds have a severe and negative impact upon insurers operating in this state by imposing unexpected liabilities when insurers have

---

**20.** W. Va.Code § 33–6–31 has been amended since our decision in *Mitchell v. Broadnax*, but the subsection under consideration therein has remained unchanged. *Compare* W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996) *with* W. Va. Code § 33–6–31(k) (1998) (Repl.Vol.2000).

relied upon the insurance commissioner's approval of the forms used and the rates charged insureds; and

(7) That it is in the best interest of the citizens of this state to ensure a stable insurance market.

(c) *Nothing in this chapter may be construed as requiring specific line item premium discounts or rate adjustments corresponding to any exclusion, condition, definition, term or limitation in any policy of insurance, including policies incorporating statutorily mandated benefits or optional benefits which as a matter of law must be offered.* Where any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full compliance with the requirements of this chapter. *It is the intent of the Legislature that the amendments in this section enacted during the regular session of two thousand two are: (1) A clarification of existing law as previously enacted by the Legislature, including, but not limited to, the provisions of subsection (k), section thirty-one of this article; and, (2) specifically intended to clarify the law and correct a misinterpretation and misapplication of the law that was expressed in the holding of the Supreme Court of Appeals of West Virginia in the case of Mitchell v. Broadnax,* [208 W.Va. 36,] *537 S.E.2d 882 (W.Va.2000).* These amendments are a clarification of the existing law as previously enacted by this Legislature.

(Emphasis added). It is this statutory language, particularly the Legislature's clarification of the effect of W. Va.Code § 33–6–31(k) and this Court's holding in *Mitchell v. Broadnax* enunciated in subsection *c*, which the circuit court found to be retroactive, and which we are called upon to examine in the case *sub judice.*

When determining whether a statute or statutory amendment should be applied retroactively, we are guided by the Legislature's own pronouncement that

[t]he following rule[ ] shall be observed in the construction of statutes, unless a different intent on the part of the Legislature be apparent from the context:

. . . .

(bb) A statute is presumed to be prospective in its operation unless expressly made retrospective[.]

W. Va.Code § 2–2–10(bb) (1998) (Repl.Vol. 2002). Applying this provision, we have understood it to mean that " '[t]he presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect.' Pt. 4, syllabus, *Taylor v. State Compensation Commissioner,* 140 W.Va. 572[, 86 S.E.2d 114 (1955) ]." Syl. pt. 1, *Loveless v. State Workmen's Comp. Comm'r,* 155 W.Va. 264, 184 S.E.2d 127 (1971). *Accord* Syl. pt. 2, *Conley v. Workers' Comp. Div.,* 199 W.Va. 196, 483 S.E.2d 542 (1997); *State v. Bannister,* 162 W.Va. 447, 453, 250 S.E.2d 53, 56 (1978). Thus, "[t]he general rule is that statutes are construed to operate in the future only and are not given retroactive effect unless the legislature clearly expresses its intention to make them retroactive." *Loveless,* 155 W.Va. at 266, 184 S.E.2d at 129 (citations omitted).

Despite this general rule of prospectiveness, we have nevertheless determined that "[s]tatutory changes that are purely procedural in nature will be applied retroactively." Syl. pt. 1, *Joy v. Chessie Employees Fed. Credit Union,* 186 W.Va. 118, 411 S.E.2d 261 (1991). This is so because legislative enactments that do not affect substantive rights are less likely to unconstitutionally infringe upon the rights of those relying upon the statutory language at issue. *See Public Citizen, Inc. v. First Nat'l Bank in Fairmont,* 198 W.Va. 329, 335, 480 S.E.2d 538, 544 (1996) (observing that, "[i]n these situations, the reliance interest that is the foundation of the interpretive principle limiting retroactive application is not engaged"). *See also Landgraf v. USI Film Products,* 511 U.S. 244, 266, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229, 253 (1994) ("The Legislature's

unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration.").

■ Where, however, "a new ... provision would, if applied in a pending case, attach a new legal consequence to a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply." *Id. See also Gribben v. Kirk*, 197 W.Va. 20, 26, 475 S.E.2d 20, 26 (1996) (per curiam) (observing that the Legislature's "unmatched power does not allow [it] to retroactively change statutes so as to sweep away vested property rights" (citations omitted)); *Lester v. State Comp. Comm'r*, 123 W.Va. 516, 521, 16 S.E.2d 920, 924 (1941) (noting that legislation cannot be made retroactive "when the effect will be to impair the obligation of contracts or to disturb vested rights" (internal quotations and citation omitted)), *overruled on other grounds by Sizemore v. State Workmen's Comp. Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975). Indeed, we specifically have held that

> "[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application." Syllabus Point 2, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. pt. 2, *Smith v. West Virginia Div. of Rehabilitative Servs. & Div. of Pers.*, 208 W.Va. 284, 540 S.E.2d 152 (2000).

■ In the case *sub judice*, the legislative amendments to W. Va.Code §§ 33–6–30(b–c) are most certainly substantive in nature. The effect of such amendatory language is to extinguish any litigable rights that have accrued as a result of this Court's holding in *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), and to foreclose lawsuits that have been initiated as a result thereof. However, absent explicit statutory language or a clear expression of legislative intent that such amendments are to apply retroactively, we are directed, by the Legislature, itself, to afford them prospective only application. *See* W. Va.Code § 2–2–10(bb). *See also Hughes v. Washington*, 389 U.S. 290, 296–97, 88 S.Ct. 438, 442, 19 L.Ed.2d 530, 535–36 (1967) (Stewart, J., concurring) ("[A] State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of asserting retroactively that the property it has taken never existed at all."); *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 351 n. 10, 452 S.E.2d 436, 442 n. 10 (1994) ("It has been stated repeatedly that new legislation should not generally be construed to interfere with existing contracts, rights of action, suits, or vested property rights." (emphasis and citation omitted)); *State v. Hensler*, 187 W.Va. 81, 83, 415 S.E.2d 885, 887 (1992) (per curiam) ("[D]ue process places a limitation on retroactive judicial application of statutory enactments which precludes the court from effecting a result which the legislature is barred from achieving as a result of the *ex post facto* prohibition." (citation omitted)).[21] Accord-

---

**21.** Our decision of this issue is contrary to the conclusion reached by the United States District Court for the Southern District of West Virginia during its assessment of the retroactivity of W. Va.Code § 33–6–30, and upon which the circuit court relied in rendering its decision. *See Hutchens v. Progressive Paloverde Ins. Co.*, 211 F.Supp.2d 788, 794 (S.D.W.Va.2002) (concluding that W. Va.Code § 33–6–30 has retroactive effect). We note, however, that this Court is not bound by this authority, and, in this regard, we have specifically held that "[t]he decision of the highest court of a State in the construction of its statutes ... is the controlling rule of decision in federal courts, where there is no federal question." Syl. pt. 3, in part, *Clarksburg Elec. Light Co. v. City of Clarksburg*, 47 W.Va. 739, 35 S.E.

994 (1900). *Accord Louisville, New Orleans & Texas Ry. Co. v. Mississippi*, 133 U.S. 587, 591, 10 S.Ct. 348, 349, 33 L.Ed. 784, 785 (1890) ("[T]he construction of [a] statute of the State by its highest court ... must be accepted as conclusive[.]"); *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 513, 165 S.E.2d 90, 98 (1968) (refusing to adopt federal court's construction of West Virginia statute, recognizing that "this Court is not bound by and is not required to adhere to such interpretation" where the statute at issue had not been "interpreted by any prior decision of this Court"); *Clarksburg Elec. Light Co.*, 47 W.Va. at 746, 35 S.E. at 996 ("The decision of the state court of last resort upon rights dependent alone upon its law, its statutes, is conclusive

ingly, we disagree with the circuit court's ruling to the contrary.

### B. Standing

Ms. Findley next argues that the circuit court incorrectly found that she does not have standing to challenge, pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), State Farm's definition of an underinsured motor vehicle. In the subject policy, the definition of an "underinsured motor vehicle" specifically excludes "a land motor vehicle . . . insured under the liability coverage of this policy." [22] During its deliberation and decision of this matter, the circuit court determined that

[t]he definition of "underinsured motor vehicle" as contained within the applicable State Farm policy originally issued September 26, 1991 is consistent with the statutory requirements of the West Virginia Code and is in accord with public policy.

. . . .

The plaintiff's [Ms. Findley's] *Broadnax* arguments cannot be applied to this provision of the subject policy. The policy in question was issued September 26, 1991. Endorsement 6069AG received approval in December 1989 and became effective January 1, 1990, prior to issuance of the subject policy. If a challenge to the endorsement could be brought, the Court is of the opinion is could only be done by persons owing policies on January 1, 1990, alleging benefits were deleted from their policies without corresponding adjustments to premiums.[23]

(Footnote added). On appeal to this Court, Ms. Findley argues that the circuit court improperly denied her standing to assert her claim when she is a proper party to bring a declaratory judgment action pursuant to W. Va.Code § 55–13–2 (1941) (Repl.Vol.2000).[24] State Farm responds, however, that Ms.

Findley lacked standing to assert the claims in this proceeding and that the circuit court's ruling on this point should be affirmed.

▆▆▆▆ Given the procedural posture of the instant appeal, the questions presented for our consideration by this assignment of error are whether Ms. Findley has standing to assert a claim pursuant to the Declaratory Judgment Act, W. Va.Code § 55–13–1, *et seq.*, and to obtain the relief she seeks thereunder in accordance with this Court's holdings in *Mitchell v. Broadnax*. Generally, standing is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1413 (7th ed.1999). More specifically, it is well-recognized, and we now so hold, that

[s]tanding . . . is comprised of three elements: First, the party . . . [attempting to establish standing] must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection [between] the injury and the conduct forming the basis of the lawsuit. Third, *it must be likely that the injury will be redressed through a favorable decision of the court.*

*Coleman v. Sopher,* 194 W.Va. 90, 95 n. 6, 459 S.E.2d 367, 372 n. 6 (1995) (emphasis added). *Accord Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, 709 (1982); *Guido v. Guido,* 202 W.Va. 198, 202, 503 S.E.2d 511, 515 (1998) (per curiam).

▆▆▆▆ Furthermore,

[s]tanding does not refer simply to a party's capacity to appear in court. Rather,

upon the Federal judiciary."). *See also* Syl. pt. 4, *State v. Wender,* 149 W.Va. 413, 141 S.E.2d 359 (1965) ("In construing our state constitution, the Supreme Court of Appeals is not bound by rulings of courts of other states or of the United States Supreme Court.").

**22.** This language was added to State Farm policies of motor vehicle insurance on January 1, 1990, through Amendatory Endorsement

6069AG. *See supra* note 6 and accompanying text.

**23.** The circuit court further found that Ms. Findley's " 'Broadnax' claim [was] not applicable."

**24.** For the text of W. Va.Code § 55–13–2 (1941) (Repl.Vol.2000), see *supra* note 8.

standing is gauged by the specific common-law, statutory or constitutional claims that a party presents. "Typically, ... the standing inquiry requires careful judicial examination ... to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted.*" *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 77, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134, 143 (1991) (quoting *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556, 570 (1984)) (emphasis in original) (additional citation omitted). *Accord Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975) ("In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). "In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue[.]" *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, 961 (1968) (footnote omitted). *Accord Louisiana Environmental Action Network v. Browner,* 87 F.3d 1379, 1382, 318 U.S.App. D.C. 370, 373 (1996) ("Our standing inquiry focuses on the appropriateness of a party bringing the questioned controversy to the court."); *American Alternative Energy Partners II v. Windridge, Inc.,* 42 Cal.App.4th 551, 559, 49 Cal.Rptr.2d 686, 691 (1996) ("[S]tanding to sue—the real party in interest requirement—goes to the existence of a cause of action, *i.e.,* whether the plaintiff has a right to relief.").

■ This requirement of the propriety of a party to assert a particular claim and his/her likelihood of success thereon is echoed in our case law discussing standing in the context of declaratory judgment actions. "It is a primary requirement of the Declaratory Judgments Act that plaintiffs demonstrate they have standing to obtain the relief requested." *Shobe v. Latimer,* 162 W.Va. 779, 784, 253 S.E.2d 54, 58 (1979). As Ms. Findley's declaratory judgment action is premised upon her claim for relief pursuant to *Mitchell v. Broadnax,* because the subject policy lan-

guage allegedly does not comport with the requirements of our holdings therein, we must thus decide whether she is entitled to assert such a cause of action.

■ Under the facts of the case *sub judice,* it is apparent that State Farm incorporated the challenged policy language, whereby it limited its definition of an underinsured motor vehicle, on January 1, 1990, following the Commissioner's approval thereof. Additionally, the record does not indicate that this challenged exclusionary language has been amended, altered, or otherwise modified since its initial incorporation into policies of motor vehicle insurance in 1990. Subsequently, on September 26, 1991, Mr. Findley contracted with State Farm for the motor vehicle insurance coverage at issue herein. Although Ms. Findley ultimately has become an insured and a policyholder under this insurance policy,[25] her attempt to assert a claim for relief in this context is effectively a request that this Court retroactively apply our holdings in *Mitchell v. Broadnax* so as to bring within its scope an insurance contract which was entered into before this Court's decision therein and which contract has contained the allegedly objectionable language since the date of the policy's issuance. *See* Syl. pt. 3, *Sizemore v. State Workmen's Comp. Comm'r,* 159 W.Va. 100, 219 S.E.2d 912 (1975) ("A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; *only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage* can it be considered to be retroactive in application." (emphasis added)). When such a request for retroactivity is made, we cautiously consider whether such retrospective application is indeed warranted.

In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and

**25.** *See supra* notes 2 & 4.

the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

Syl. pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). *Accord* Syl. pt. 4, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993); Syl. pt. 4, *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989). *See also Bowers v. Wurzburg*, 205 W.Va. 450, 468, 519 S.E.2d 148, 166 (1999) (declining to afford judicial decision broad retroactivity where, before its issuance, there existed "lack of clear authority in this State," which resulted in "uncertainty of the law" as to issue decided (footnote omitted)).

■ Applying these criteria to our holdings in *Mitchell v. Broadnax*, we conclude that our decision in *Mitchell* should not be applied retroactively to permit the prosecution of Ms. Findley's claim thereunder. In short, retroactivity is not warranted because our decision in *Mitchell* involved a matter of substantive law, namely W. Va.Code § 33–6–31(k), which had, prior to our decision therein, received sparse treatment in our judicial decisions and had not been amended by the Legislature since its original enactment in 1979.[26] Given this dearth of interpretive authority, it goes without saying that the holdings we announced in *Mitchell* were "not clearly foreshadowed." Syl. pt. 5, in part, *Bradley*, 163 W.Va. 332, 256 S.E.2d 879. Furthermore, the substantial public policy issues implicated in our holdings, and explicitly identified by the Legislature in W. Va. Code § 33–6–30(b), mitigate in favor of a rule of prospectiveness. *See id.* Finally, as noted above, while we long have held exclusions in insurance policies to be valid,[27] we had not, prior to *Mitchell*, delineated the express requirements therefor contained in W. Va.Code § 33–6–31(k).

■ Thus, for the same reasons we declined to apply W. Va.Code §§ 33–6–30(b–c) retroactively in order to safeguard the substantive rights of insureds that had accrued before its passage, we likewise decline to apply our holdings in *Mitchell v. Broadnax* retroactively in order to shield insurers from the imposition of augmented substantive liabilities that did not clearly exist prior to the announcement of such holdings. *See* Syl. pt. 2, *Smith*, 208 W.Va. 284, 540 S.E.2d 152. Having found *Mitchell* to have prospective only application, it is imperative to explain how this decision interplays with our previous conclusion that W. Va.Code § 33–6–30 also has only prospective application. Therefore, we hold as a matter of law, that the holdings of *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), which allow insureds to pursue a cause of action against insurers to enforce the requirements of W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996), apply only to those exclusions to insurance

26. To date, W. Va.Code § 33–6–31(k) has not yet been amended, although its provisions have been clarified as a result of the Legislature's enactment of W. Va.Code § 33–6–30(c). *See* W. Va. Code § 33–6–31(k) (1998) (Repl.Vol.2000); W. Va.Code § 33–6–30(c) (2002) (Supp.2002).

27. *See* Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) ("Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes."). *Accord* Syl. pt. 4, *American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825 (2002); Syl. pt. 3, *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000); Syl. pt. 1, *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992).

coverage incorporated into policies of motor vehicle insurance on or after the effective date of our decision therein, *i.e.*, February 18, 2000, and before the effective date of the Legislature's amendments to W. Va.Code § 33–6–30 (2002) (Supp.2002), *i.e.*, June 5, 2002. We make no determination, however, as to the success of such claims in light of the Commissioner's responsibility to evaluate the propriety of premiums as an essential and integral part of its function to approve insurance forms used in this State.[28] *See generally* W. Va.Code § 33–6–9(e) (1957) (Repl.Vol. 2000) (directing that "[t]he commissioner shall disapprove any such form of policy, application, rider, or endorsement or withdraw any previous approval thereof … [i]f the benefits provided therein are unreasonable in relation to the premium charged").

■■■ Applying this rule to the facts of the case *sub judice*, we conclude that Ms. Findley does not have standing to assert a claim

pursuant to *Mitchell v. Broadnax* because the exclusionary language of which she complains was neither incorporated into her policy of motor vehicle insurance nor modified so as to require a corresponding premium adjustment during the narrow temporal window described above. Absent an entitlement to the relief sought in accordance with *Mitchell*, Ms. Findley lacks standing to pursue her declaratory judgment action based thereon. *See Shobe v. Latimer*, 162 W.Va. at 784, 253 S.E.2d at 58. Accordingly, we affirm the circuit court's ruling insofar as it determined that Ms. Findley did not have standing to assert a claim pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000).[29]

### C. Anti–Stacking Provisions

■■■■ Ms. Findley further asserts that the circuit court improperly determined that she was not entitled to stack coverages under her State Farm motor vehicle insurance poli-

---

**28.** Based upon the very existence of the instant proceeding, and the Legislature's amendments to W. Va.Code § 33–6–30 following our decision in *Mitchell v. Broadnax*, we feel the need to further clarify the intended scope and effect of the holdings we previously announced therein. In spite of the plethora of recent lawsuits claiming to the contrary, we did not intend in *Mitchell* to declare that a *quid pro quo* premium adjustment is required to accompany every exclusion incorporated into a policy of motor vehicle insurance or even to suggest that such a corresponding premium necessary reflects a reduction thereof. Rather, the solitary goal that we wished to achieve through that decision was the elucidation and enforcement of the all but forgotten legislative directive contained in W. Va.Code § 33–6–31(k), which specifically instructs that "insurer[s are not prevented] from incorporating in such terms, conditions and exclusions *as may be consistent with the premium charged*." (Emphasis added). In hindsight, however, it is evident that, although we ordinarily must presume that the Legislature means what it says in its enactments and that we must apply a statute's plain language without further interpretation of its terms, the construction we afforded to subsection *k* did not comport with the Legislature's understanding thereof. *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (" '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' ") (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)). *See also* Syl. pt. 4, *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999) (" ' "A statutory provision which is

clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)."). Above all, we wish to make abundantly clear that our most basic and preeminent concern in the *Mitchell* case, as in the case *sub judice*, is that insurance consumers and insurance purveyors alike receive the benefit of their bargained for exchange when they meet to contract for motor vehicle insurance coverage. *See generally* Syl. pt. 5, *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (recognizing simultaneous rights of insureds to pay premiums consistent with policy coverage and insurers to incorporate exclusionary language in policies of motor vehicle insurance).

Moreover, we reiterate our prior admonishment that it is the responsibility of this State's Insurance Commissioner to review such policy exclusions and to ensure that they are consistent with the premiums charged for such coverage. *See Mitchell v. Broadnax*, 208 W.Va. at 48–50, 537 S.E.2d at 894–96. We further applaud the Legislature's express recognition and explanation of the Commissioner's function in this regard. *See* W. Va.Code §§ 33–6–30(b–c).

**29.** Although we are affirming the circuit court's dismissal of Ms. Findley's *Mitchell v. Broadnax* claim, we wish to make clear that, because the circuit court did not certify this case as a class action, the dismissal of Ms. Findley's claim does not affect the rights of potential members of the class she purported to represent.

cy. This argument is premised upon two types of anti-stacking provisions contained in the subject policy. First, the definition of an "underinsured motor vehicle" effectively precludes an insured, whose vehicle is insured under the policy's liability coverage, from also collecting UIM benefits with regard to the same vehicle involved in the same covered occurrence.[30] On this point, the circuit court found "as a matter of law that the subject vehicle is not an 'underinsured motor vehicle' under the applicable insurance policy, as the definition of underinsured motor vehicle clearly and unambiguously precludes UIM coverage for a vehicle insured under the same policy for liability purposes." (Citations omitted). The court continued that, "to declare this provision invalid would 'emasculate' this State's underinsured motorist statutory provision, and, in effect, would transform the underinsured coverage into liability coverage."

The second anti-stacking provision at issue herein precludes an insured from stacking the UIM coverages of vehicles owned by the same insured but covered under different State Farm policies and limits such recovery to an amount not to exceed the policy providing the highest level of liability coverage.[31] With respect to this exclusion, the circuit court determined that "State Farm is entitled to the granting of its ... [m]otion for summary judgment on the issue of Laura Findley's stacking claim in light of the clear and unambiguous exclusion prohibiting stacking, for which John Findley received a multi-car discount." As to both such anti-stacking provisions, Ms. Findley urges this Court to find that they violate the requirements of W. Va.Code § 33–6–31(k) as that statute was interpreted in *Mitchell v. Broadnax*, while State Farm maintains that such exclusions are valid and enforceable.

We noted above that Ms. Findley does not have standing to assert a claim pursuant to *Mitchell v. Broadnax* under the facts presently before this Court. Therefore, her argument that the anti-stacking provisions contained in her State Farm policy are not enforceable because they do not comply with the requirements of the holdings of *Mitchell* is without merit.

 Nevertheless, were we to find Ms. Findley to be entitled to the relief she seeks under *Mitchell*, her claim is governed by our well-established precedent upholding both types of anti-stacking exclusions.

There is no common law right to stack coverage available for multiple vehicles under the same policy or under two or more insurance policies. The right to stack must arise from the insurance contract itself (as that is the agreement of the parties) or from a statute (as in the uninsured and underinsured motorist coverage statutes).

Syl. pt. 1, *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995). Regarding policy language that prohibits the recovery of UIM benefits where liability coverage has already been collected, we have held that

[w]hen an insurer issues an automobile insurance policy which provides both liability and underinsured motorists coverage, but which policy contains what is commonly referred to as a "family use exclusion" for the underinsured motorist coverage, and when, in a single car accident, the passenger/wife receives payments under the liability coverage for the negligence of the driver/husband, such exclusion is valid and not against the public policy of this state. That exclusion, which excludes from the definition of "underinsured motor vehicle" any automobile owned by or furnished for the regular use of the insured or a relative, has the purpose of preventing underinsured coverage from being converted into additional liability coverage.

Syl. pt. 2, *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992). *See also* Syl. pt. 3, *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 ("An insured is not entitled to stack liability coverages for every vehicle covered by his or her policy when the insured received a multi-car discount, when only one vehicle was involved in the accident, and when the policy contains language limiting the insurer's liability.").

---

**30.** *See supra* note 6 and accompanying text.

**31.** *See supra* note 7 and accompanying text.

This is so because "[w]here an insurance policy specifically excludes any motor vehicle owned by the policy holder from the definition of an 'underinsured motor vehicle,' then the underinsured motorist coverage was intended to protect the insured against losses caused by the negligence of another motorist who is underinsured." Syl. pt. 4, in part, *Alexander v. State Auto. Mut. Ins. Co.*, 187 W.Va. 72, 415 S.E.2d 618 (1992).

▮ Likewise, we have found policy language precluding the stacking of UIM coverages for different vehicles to be valid and enforceable.

> West Virginia Code § 33–6–31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

Syl. pt. 5, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992). *See also* Syl. pt. 4, *Starr v. State Farm Fire & Cas. Co.*, 188 W.Va. 313, 423 S.E.2d 922 (1992) ("Under W. Va.Code, 33–6–31(c)(1988), one who is entitled to uninsured or underinsured motorist benefits solely by virtue of his or her occupancy or use of the policyholder's vehicle may not stack the policyholder's uninsured/underinsured motorist coverage on another vehicle not involved in the accident."). *Cf.* Syl. pt. 3, *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990) ("So-called 'antistacking' language in automobile insurance policies is void under *W. Va. Code*, 33–6–31(b), as amended, to the extent that such language is purportedly applicable to uninsured or underinsured motorist coverage, and an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident and injury.").

Based upon these prior decisions upholding anti-stacking policy provisions such as those at issue in the case *sub judice*, we affirm the circuit court's ruling upholding the anti-stacking provisions contained in Ms. Findley's State Farm policy.

### D. Summary Judgment

Lastly, Ms. Findley claims that the circuit court erred by denying her cross-motion for summary judgment. At the conclusion of its August 1, 2002, order, the circuit court determined that Ms. Findley had not demonstrated grounds for the relief she had requested. On appeal to this Court, Ms. Findley asserts that she is, in fact, entitled to judgment as a matter of law. State Farm, however, concurs in the circuit court's ruling which denied Ms. Findley relief.

▮ Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). Stated otherwise,

> [a] motion for a summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law.

Syl. pt. 5, *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971). *Accord* Syl. pt. 4, *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989); Syl. pt. 1, *Floyd v. Equitable Life Assurance Soc'y*, 164 W.Va. 661, 264 S.E.2d 648 (1980) (per curiam). *See also* Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963) ("A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.").

▮ Ordinarily, "[a]n order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is

**100**

appealable." Syl. pt. 8, *Aetna*, 148 W.Va. 160, 133 S.E.2d 770. *See also* Syl., *Wilfong v. Wilfong*, 156 W.Va. 754, 197 S.E.2d 96 (1973) ("The entry of an order denying a motion for summary judgment made at the close of the pleadings and before trial is merely interlocutory and not then appealable to this Court."). Nevertheless, a party may "appeal ... a denial of summary judgment after the conclusion of a trial and the entry of a final order." *Coleman v. Sopher*, 201 W.Va. 588, 594 n. 3, 499 S.E.2d 592, 598 n. 3 (1997). *Accord Wilfong*, 156 W.Va. at 759, 197 S.E.2d at 100. Likewise, where, as in the case *sub judice*, the order denying one party's motion for summary judgment simultaneously grants summary judgment to another party, such an order is final and appealable. In this regard, we have observed that "[a] motion for summary judgment which is granted ... is an appealable final order." *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 377 n. 5, 376 S.E.2d 581, 583 n. 5 (1988) (citation omitted). This is so because, "an order qualifies as a final order when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Durm v. Heck's, Inc.*, 184 W.Va. 562, 566, 401 S.E.2d 908, 912 (1991) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 921 (1945)) (additional citation omitted). Mindful of these principles, we now consider Ms. Findley's assignment of error.

Based upon the issues presented by the instant appeal, we concur with the circuit court's decision to deny Ms. Findley's cross-motion for summary judgment. As noted above, an integral precondition to such relief is a legal entitlement thereto. In this proceeding, however, Ms. Findley has not asserted grounds upon which she may legally recover. We have determined that she is not a proper party to assert a claim pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), and our decision to apply W. Va.Code §§ 33–6–30(b–c) prospectively only likewise does not afford her relief. Moreover, we have concluded that the anti-stacking exclusions contained in the State

Farm policy at issue herein are valid and enforceable. Thus, give our determination of the foregoing questions of law, we conclude that Ms. Findley has not demonstrated her entitlement "to a judgment as a matter of law" as required by Rule 56(c) of the West Virginia Rules of Civil Procedure. Accordingly, we affirm the circuit court's ruling denying Ms. Findley's cross-motion for summary judgment.[32]

## IV.

### CONCLUSION

In summary, we conclude that (1) the language of W. Va.Code §§ 33–6–30(b–c) (2002) (Supp.2002) does not apply retroactively; (2) Ms. Findley cannot assert a claim for relief pursuant to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000); (3) the anti-stacking exclusions contained in the State Farm policy of motor vehicle insurance at issue herein are valid and enforceable; and (4) Ms. Findley is not entitled to summary judgment. Accordingly, the August 1, 2002, order of the Circuit Court of Barbour County is hereby affirmed.

Affirmed.

STARCHER, Justice, concurring.

(Filed Dec. 13, 2002)

I concur with the majority opinion, but I write separately to express my confusion over the firestorm that has been whipped into being about the true meaning of *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000).

Our Legislature, in its wisdom, followed in the footsteps of many other states in the 1960s and began to require insurance companies to provide uninsured and underinsured motorist insurance. The Legislature—not the insurance industry—defines what an uninsured motorist is and what an underinsured motorist is, and basically says this coverage protects policyholders wherever they are, so long as they are injured by an uninsured or underinsured motorist.

**32.** In light of this decision, we need not further address or consider State Farm's cross-assign-

ments of error. *See generally* Section III., *supra*.

For example, in *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997) we said a teenager injured when she dove out of the way of a swerving uninsured driver and into a ditch was protected by her parents' uninsured motorist coverage. She was not in, on, upon, or using a particular vehicle. She was simply walking down the road on her way to a football game—and under West Virginia law, her injuries caused directly by the uninsured driver were covered.

*Mitchell v. Broadnax* involved a little old lady who bought an uninsured motorist insurance policy—with $300,000.00 in coverage—on a car she probably never drove. She religiously paid her premiums for several decades. She was seriously injured on her way home from church when an uninsured drunk driver plowed head-on into a car in which she was a passenger. Ms. Mitchell sought uninsured motorist benefits from her insurance policy, but the insurance company refused to pay.

Buried in the insurance policy was an exclusion that said if Ms. Mitchell was hurt by an uninsured motorist while she was riding in a car that she owned, but did not insure under the insurance policy she paid for, then she had no coverage. When Ms. Mitchell was injured by the drunk driver, she was a passenger in a car she owned 50–50 with her daughter. Since her daughter bought insurance coverage for the car in which they were riding from another company, Ms. Mitchell's insurance company refused to pay her anything.

In other words, Ms. Mitchell paid premiums for $300,000.00 in insurance to protect her in case she was injured by an uninsured motorist. But because she helped her daughter buy a car, and then didn't encourage her daughter to buy insurance from the same insurance company as Ms. Mitchell, when she was injured by an uninsured motorist her insurance company refused to pay her the coverage for which she had paid her premiums. The circuit court upheld this decision by the insurance company.

All we said in *Mitchell v. Broadnax* was that under West Virginia law, if an insurance company wants to use an "owned-but-not-insured" exclusion to reduce its statutorily-required uninsured motorist coverage, like the one that surprised Ms. Mitchell, the insurance company has to prove that it appropriately adjusted its premiums to reflect a reduction in coverage for the exclusion. The insurance company couldn't just slip the exclusion in a policy without also showing it appropriately changed the premiums—both actions were required by West Virginia law. Otherwise, the exclusion would be invalid. We remanded the case back to circuit court to determine if the insurance company ever told Ms. Mitchell it was changing her coverage and/or her premiums.

Somehow, *Mitchell v. Broadnax* has taken on epic proportions, with fears that every exclusion in every insurance policy ever issued in the market will be challenged, and the insurance industry panicking over the thought it might have to reveal to policyholders just how many exclusions they are packing into insurance policies without making any reductions to the premiums they are asking policyholders to pay. The facts in the instant case show why.

In the instant case, State Farm asked the Insurance Commissioner to approve the addition of at least sixteen different exclusions to its underinsured motorist insurance policy in November 1989. Yet even though coverage was substantially reduced, less than two years later, in May 1991, State Farm asked the Insurance Commissioner for permission to *increase* its premiums for underinsured motorist coverage by 92.7%. Another rate increase of 50% was sought in August 1993. Taken together, these increases resulted in an aggregate increase in rates of 188%, or a total of 288% of the base rate.[1] Then, in 1995, State Farm sought another rate increase in its underinsured motorist premiums, a rate increase that apparently offset State Farm's 10% multi-car discount to the penny.

---

1. At the time, State Farm argued the rate increases were needed to offset this Court's opinion in *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), where we held that an exclusion prohibiting the stacking of separate automobile insurance policies was void as against public policy. However, the Legislature later authorized anti-stacking language, and when State Farm re-introduced an anti-stacking exclusion in its policy in 1995, it did not decrease its premiums.

The record establishes that State Farm consistently raised its premiums at the same time it lowered coverage, and never told its policyholders. Such actions would certainly be impermissible under *Mitchell v. Broadnax*, but it would be unfair to State Farm to retroactively impose that case's interpretation of *W.Va.Code*, 33–6–31(k).[2]

I therefore respectfully concur.

McGRAW, Justice, concurring, in part, and dissenting, in part.

(Filed Jan. 6, 2003)

I concur with the majority's conclusion that the changes made to the statute should only be applied prospectively. However, I continue to disagree with the majority's interpretation of our insurance law with respect to uninsured motorist coverage, as I expressed in my separate opinion in *Mitchell v. Broadnax*, 208 W.Va. 36, 61, 537 S.E.2d 882, 907 (2000) (McGraw, J., concurring in part and dissenting in part). As my views from that case were ably expressed by Justice Starcher in his separate opinion in this case, I need not repeat them here.

However, I write separately because I feel that the majority is missing the central issue in this case—whether or not the premium paying citizens of this state are getting what they paid for from the insurance companies.

2. This is not to say that these exclusions cannot be found to be void for other reasons. As we stated in Syllabus Point 2 of *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985):

> Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.

In other words, an exclusion adopted prior to *Mitchell v. Broadnax* could still be found unenforceable if its wording is ambiguous, or the exclusion is contrary to statute, regulation or public policy.

Furthermore, while the Legislature enacted *W.Va.Code*, 33–6–30 [2002] as a "clarification of the existing law as previously enacted," the Legislature did nothing to clarify the confusing language used in *W.Va.Code*, 33–6–31(k), which states:

> Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.

Justice McGraw discussed the problems with the language contained in *W.Va.Code*, 33–6–31(k) in his separate opinion in *Mitchell v. Broadnax*, and offered a plausible interpretation of the statute that courts could consider:

> The first clause of the subsection straightforwardly permits insurers to "offer[ ] benefits and limits other than those prescribed [in § 33–6–31]." This language obviously permits an automobile insurer to "offer" any type of coverage (together with particular policy limits) that it chooses. It is therefore easily conceivable that an insurer could offer, in addition to the required offerings set forth in subsection (b) of the statute, other forms of coverage, including alternative uninsured or underinsured protection. What this language clearly does not sanction, however, is an automobile insurer failing in the first instance to present consumers with the prescribed optional coverages.
>
> The more crucial question in interpreting subsection (k) is whether the second clause of the statute merely applies to the subject of the first clause to the "benefits and limits other than those prescribed herein" or whether it instead has freestanding significance such that insurers have broad authority to impose exclusions upon all motor vehicle coverages, even the "optional" uninsured and underinsured coverages required under subsection (b). The *Deel [v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) ] Court apparently chose the latter construction.
>
> *Deel* misconstrued the second clause of subsection (k), an error that has been repeated in subsequent cases. This result is perhaps explained in no small part by the fact that the *Deel* Court misapprehended the relevant statutory language. The opinion, in fact, misquotes the second clause of subsection (k), by omitting the crucial word "in." *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95.
>
> Although not a model of textual clarity, the word "in" was plainly intended to be synonymous with "therein," which in effect limits the second clause to the subject of the first. Subsection (k) therefore merely permits an insurer to impose "terms, conditions and exclusions" upon "benefits and limits other than those prescribed herein." In other words, the statute allows an insurer to impose limitations or exclusions on offerings that are otherwise not specified in the statute. There is simply nothing in this language that could, by any stretch of the imagination, be construed to permit an insurance company to corrupt or curtail the coverages specifically prescribed in subsection (b), regardless of whether those coverages are mandatory or optional to the policyholder.

208 W.Va. at 61, 537 S.E.2d at 907 (McGraw, J., concurring, in part, and dissenting, in part).

People buy insurance with the hope that they will never need it. When they do need it, they expect that the coverage they bought will be available to them. If the insurance company wants to sell them a different product, one that might have more exceptions or limitations, that is its right to do so, but the price of the new product should reflect that reduced risk to the insurance company. To put it in the simplest of terms, if the insurance company is selling eggs by the dozen, the customer should find a dozen eggs in the carton, or should see a reduced price at the check-out counter.

In the same vein, I think the decision reached by the Court in *Broadnax* was not as earthshattering or complicated as some might think. In holding that an insurer who puts an exclusion in a policy must "adjust the corresponding policy premium so that the exclusion is 'consistent with the premium charged,' " syl. pt. 5 (in part), *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000), the Court was simply acknowledging a fundamental aspect of our state's contract law. That is to say, our law has long held that you should get what you pay for, and if you haven't gotten what you paid for, you have a right to sue the other party for breach of contract.

Our state has a ten year statute of limitations for suits alleging a breach of contract. *See,* W. Va.Code 55–2–6 (1923); *McKenzie v. Cherry River Coal & Coke Co.,* 195 W.Va. 742, 466 S.E.2d 810 (1995) (*per curiam*). *Broadnax,* in my view, simply recognized that insurance companies have certain obligations under our already existing contract law. By placing a "starting date" of April 2000 (when *Broadnax* was issued) on any contract action against an insurance company that failed to reduce its premiums when it reduced coverage, I believe the majority opinion runs afoul of the basic contract law of this state. Thus I cannot agree with this aspect of the majority opinion.

Because of my ongoing concerns about the majority's interpretation of our law in this area, I respectfully concur in part and dissent in part to the majority opinion.