503 S.E.2d 511

**Kendra GUIDO, Plaintiff Below/Appellee,**

v.

**John Samuel GUIDO, Defendant Below/Appellant.**

**No. 24791.**

Supreme Court of Appeals of
West Virginia.

Submitted May 6, 1998.

Decided May 15, 1998.

Sean Wilson, Weirton, for Appellant.

Roger D. Curry, McLaughlin & Curry, Fairmont, for Appellee.

Kevin V. Sansalone, Fairmont, for Child Support Enforcement Division.

PER CURIAM: [1]

John Samuel Guido, appellant/defendant below (hereinafter "Mr. Guido"), appeals two orders entered by the Circuit Court of Marion County. The first order declared Mr. Guido in contempt of a previous child support order. The second order imposed for the benefit of Kendra M. Guido, appellee/plaintiff below (hereinafter Ms. Guido) a constructive trust on certain funds in the possession of Mr. Guido's parents, Josephine Guido or John Guido d/b/a East Side Floor and Wall. Mr. Guido has asserted numerous assignments of error resulting from the court's finding of contempt and the imposition of a constructive trust.

## I.

### FACTUAL BACKGROUND

The issues in this case arise out of a divorce action involving Mr. Guido and Ms. Guido. The parties were married on June 20, 1980. Two children were born from the marriage. During the marriage, Ms. Guido was employed as a secretary. Mr. Guido worked as a coal miner. In 1991, Mr. Guido suffered a knee injury during a mine explosion. Mr. Guido eventually received a 10% permanent partial disability award from workers' compensation. Mr. Guido never returned to work after the injury. In August, 1994, Mr. Guido enrolled in a nursing program at Davis and Elkins College. Mr. Guido's entrance into the nursing program was part of retraining benefits Mr. Guido was

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

entitled to receive through workers' compensation.

In November 1994, Ms. Guido filed for divorce on the grounds of irreconcilable differences. During the final divorce hearing before the family law master, held on February 28, 1995, Mr. Guido testified on direct examination regarding his income.[2] Based upon Mr. Guido's representation of his income, the family law master recommended the sum of zero dollars as child support.[3]

Subsequent to the final hearing, Ms. Guido filed a petition for reconsideration on the question of Mr. Guido's income.[4] The basis of the petition was evidence from workers' compensation which indicated Mr. Guido was issued a benefits check in the amount of $5,923.40 in December of 1994.[5] The petition further alleged that after December, 1994, Mr. Guido received $846.20 bi-weekly from workers' compensation. A hearing on the petition was held on March 20, 1995.[6] As a result of the evidence presented at the hearing, the family law master found that Mr. Guido falsely swore regarding his income during the February hearing. The recommended order by the family law master stated the parties should be granted a divorce on the grounds of irreconcilable differences and that Mr. Guido should pay $464.70 in child support, retroactive to January 1, 1995. The circuit court, on May 30, 1995, entered an order adopting the findings and conclusions of the family law master. Mr. Guido sought an appeal of the divorce decree. This Court denied the petition for appeal on February 5, 1997.[7]

On April 18, 1996, Ms. Guido, through the Bureau of Child Support Enforcement, filed a petition seeking to have Mr. Guido found in contempt of court for failing to pay child support as required under the divorce de-

---

2. Q. Do you receive any income while you're there [nursing school] or stipends from some source?
A. No income
Q. Okay, but you do get some stipend, is that correct?
A. Yes. This is maintenance; gas money provided.
Q. And who pays that?
A. Division of Rehabilitative Services.
Q. And how much do they pay you?
A. A hundred and twelve dollars ($112.00) every two (2) weeks.
* * *
Q. So you're not receiving any Workmen's Compensation at all?
A. Nothing. But they have to pay the school when they turn in the invoice.
Q. You don't have any part-time jobs or anything of that nature?
A. No, sir. I don't have time.
During cross-examination Mr. Guido testified regarding his income as follows:
Q. When is the last time you received any money from or concerning your Worker's Compensation claim?
A. January of last year, I got a seventy eight hundred dollar ($7,800.00) settlement for my knee, wasn't it? Or whatever. I forget.
* * *
Q. And is it your testimony that since getting the check for your ten (10) percent [impairment] you have not received any money from your Worker's Compensation claim?
A. No. I received one reimbursement check from Davis and Elkins College for a thousand and sixty four dollars ($1,064.00) or something like that.

Q. But other than that, you've received no Compensation money?
A. I haven't received none.
* * *
Q. And you understand that if you get any money, you got to tell the Court about it?
A. Yes, sir.

3. The family law master stated:
So I'm bound to find that Mr. Guido is engaged in full time schooling which ultimately would have a benefit to the children. So attribution of income to him would be inappropriate, given he has income less than the self-support amount in the calculation of child support, pursuant to guidelines for child support awards would produce a zero amount of child support in this particular circumstance.

4. The notice and petition reflected a hearing date of March 20, 1995.

5. The check represented retroactive benefits from September 1994.

6. Mr. Guido was not at the hearing. Mr. Guido contends that his counsel was not at the hearing. Ms. Guido's brief disputes the assertion and contends counsel for Mr. Guido was at the hearing. An order allowing withdrawal of counsel for Mr. Guido, based upon his misrepresentations at the February hearing, clearly indicates that Mr. Guido's attorney was present at the hearing.

7. The record indicates that Mr. Guido was criminally prosecuted for false swearing at the February hearing. He was found guilty of the charge and sentenced to a period of home confinement.

cree.[8] The petition also sought to have a constructive trust imposed upon funds belonging to Mr. Guido that were in the possession of his parents, Josephine Guido and John Guido.

A hearing on the contempt petition was held on May 20, 1996.[9] By order entered June 14, 1996, the circuit court found Mr. Guido in contempt of the child support provision of the divorce decree. The contempt order found: (1) Mr. Guido failed to pay child support as ordered; (2) Mr. Guido was in arrears of child support in the amount of $7,006.45; (3) Mr. Guido had a one half interest in rental property generating gross monthly revenues of $920.00; (4) Mr. Guido had received workers' compensation benefits in the amount of $8,462.00; (5) Mr. Guido endorsed his workers' compensation checks to his mother, Josephine Guido. Josephine Guido thereafter deposited the money with One Valley Bank into an account for East Side Floor and Wall; and (6) $4,800.00 remained in the One Valley Bank account.[10]

The circuit court deferred ruling on the request to impose a constructive trust on the account, until the issue was properly briefed by the parties' counsel. After briefs were filed, the circuit court entered an order imposing a constructive trust on the account. The order required the account balance be paid to the Child Support Enforcement Division, as partial satisfaction of child support arrearages.[11] Mr. Guido appealed the June 14, 1996 order finding him in contempt and the order of October 24, 1996 imposing a constructive trust on the One Valley Bank account.

## II.

## STANDARD OF REVIEW

■ This Court set out the standard of review of a civil contempt order in syllabus point 1 of *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996), as follows:

> In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

## III.

## DISCUSSION

### A.

### The Order From Which Mr. Guido Appeals Was Not A Final Order

■ Mr. Guido alleges that the circuit court committed error in finding that he willfully disobeyed a child support order and that he committed fraud. "Generally, an order qualifies as a final order when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Durm v. Heck's, Inc.*, 184 W.Va. 562, 566, 401 S.E.2d 908, 912 (1991), quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); citing

---

**8.** W.Va.Code § 48A–5–5(a)(1) (1986) states, in relevant part:

In addition to or in lieu of the other remedies provided by this article for the enforcement of support orders, the office of the children's advocate may commence a civil or criminal contempt proceeding in accordance with the provisions of ... [W.Va.Code § 48–2–22] ... against an obligor who is alleged to have willfully failed or refused to comply with the order of a court of competent jurisdiction requiring the payment of support. Such proceeding shall be instituted by filing with the circuit court a petition for an order to show cause why the obligor should not be held in contempt.

**9.** The transcript reveals that the circuit court treated the matter as a civil contempt proceeding.

**10.** Josephine Guido was present at the contempt hearing and she testified.

**11.** The October 24, 1996 order also reserved ruling on the imposition of a contempt sanction against Mr. Guido until Mr. Guido completed his punishment for criminal prosecution arising from his false swearing during the divorce proceedings.

*B.F. Goodrich Co. v. Grand River Dam Auth.*, 712 F.2d 453, 454 (10th Cir.1983). · To be appealable, therefore, an order either must be a final order or an interlocutory order approximating a final order in its nature and effect. *See* Syl. pt. 4, *Taylor v. Miller*, 162 W.Va. 265, 249 S.E.2d 191 (1978) ("Ordinarily a judicial memorandum opinion lacks the requisite finality to be appealable, since it does not constitute the final judgment order of the court"). This Court addressed the issue of a final order in syllabus point 3 of *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) as follows:

> Under W.Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

"This rule, commonly referred to as the 'rule of finality,' is designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" *James M.B.*, 193 W.Va. at 292, 456 S.E.2d at 19, quoting *United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754, 756 (1982).

In the instant proceeding the circuit court's order of June 14, 1996 found Mr. Guido in contempt. The order did not establish a sanction against Mr. Guido. The order of October 24, 1996 specifically held that "the Court reserves ruling upon [plaintiff's] request for sanctions against [Mr. Guido] for his previously adjudged contempt until such time as [Mr. Guido] has completed or is about to complete the service of his various criminal sentences as levied by Division II of this Circuit." Until such time as a sanction against Mr. Guido is actually imposed, no final judgment has been rendered in the case. *See Coleman v. Sopher*, 194 W.Va. 90, 94, 459 S.E.2d 367, 371 (1995) ("The usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case"). Citing, *Parkway Fuel Serv., Inc. v. Pauley*, 159 W.Va. 216, 219, 220 S.E.2d 439, 441 (1975).

**B.**

### Mr. Guido Lacks Standing To Raise Issues Relating To His Parents

■ Mr. Guido has made the following additional assignments of error: (1) the circuit court lacked personal jurisdiction over Josephine Guido and John Guido d/b/a East Side Floor and Wall for the purpose of imposing a constructive trust on funds in their possession; (2) Josephine Guido and John Guido were denied due process of law by not receiving notice or an opportunity to be heard through their lawyer; (3) the circuit court erred in ruling that a constructive trust could apply against Josephine Guido and John Guido; and (4) the circuit court erred in finding that Josephine Guido and John Guido committed fraud.

■ Ms. Guido contends in her brief that Mr. Guido lacks standing to present these issues. We agree. Section 3 of Article VIII of the West Virginia Constitution refers to the word "controversy" in discussing this Court's appellate jurisdiction. Clearly, Section 3 requires that a litigant have "standing" to challenge the action sought to be adjudicated on appeal. Standing, in turn, is comprised of three elements: First, the party must have suffered an "injury-in-fact"—an invasion of a legally protected interest. Second, there must be a causal connection between the injury and the conduct forming the basis of action. Third, it must be likely that the injury will be redressed through a favorable decision of the court. *Coleman*, 194 W.Va. at 95 n. 6, 459 S.E.2d at 372 n. 6. We held in syllabus point 2 of *Burns v. Cities Service Company*, 158 W.Va. 1059, 217 S.E.2d 56 (1975) that "[a] party is entitled to prosecute a civil action as the real party in interest when he establishes an actual and justiciable interest in the subject matter of the litigation." It was noted in *Snyder v. Callaghan*, 168 W.Va. 265, 275, 284 S.E.2d 241, 248 (1981) that "[i]n order to have standing ... a party must allege an injury in fact, either economic or otherwise, which is the result of the challenged action[.]" *See also, Shobe v. Latimer*, 162 W.Va. 779, 790, 253 S.E.2d 54, 61 (1979) ("when a person's significant interests are directly injured or adverse-

ly affected … such person has standing"); *Petition of City of Beckley to Annex, by Minor Boundary Adjustment, West Virginia Route 3 Right–of–Way Beginning at Present Corporate Limits,* 194 W.Va. 423, 460 S.E.2d 669 (1995) (finding volunteer fire departments lacked standing to have review of administrative decision).

In the instant matter it is quite clear that Mr. Guido lacks standing to bring any appeal issues which directly involve his parents. He has no justiciable interest in the claims of his parents. Simply put, Mr. Guido's parents could have intervened at the circuit court level. Mr. Guido's parents could have intervened as a matter of right under Rule 24(a) of the West Virginia Rules of Civil Procedure. His parents chose not to intervene, even though Mr. Guido's mother testified at the contempt hearing. Also, Ms. Guido correctly notes that Mr. Guido's parents could have invoked Rule 22 of the West Virginia Rules of Appellate Procedure in an effort to intervene before this Court. Mr. Guido's parents have not intervened before this Court. Therefore, insofar as the October 24, 1996 order determined interests concerning Mr. Guido's parents, that order was a final appealable order as to any adverse claims against Mr. Guido's parents. Furthermore, as Mr. Guido lacks standing to raise issues relating to his parent's claim, his appeal of the October 24, 1996 order is without merit.

### IV.

### CONCLUSION

For the reasons stated herein, this appeal is dismissed as improvidently granted.

Dismissed.