# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

June 18, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia ex rel. MTR Gaming Group, Inc.,**
**Petitioner**

**vs) No. 12-0734 (Hancock No. 09-C-175)**

**The Honorable Arthur M. Recht, Judge of the Circuit Court**
**of Hancock County; and Edson R. Arneault,**
**Respondents**

## MEMORANDUM DECISION

The petitioner herein, MTR Gaming Group, Inc. ("MTR"), requests that this Court issue a writ of prohibition to prevent the Circuit Court of Hancock County from enforcing its order finding MTR in civil contempt for violating a previous order of the court entered March 1, 2010. By counsel, Robert J. D'Anniballe, Jr. and Rochelle L. Moore, MTR requests the writ of prohibition, arguing that the court-ordered sanctions are clear error. By counsel, Daniel J. Guida and Robert P. Fitzsimmons, respondent Edson R. Arneault ("Arneault") argues against issuance of a writ of prohibition, asserting that the court did not commit error.

Upon consideration of the standard of review, the parties' briefs, the record presented, and the oral arguments, this Court finds no substantial question of law and no prejudicial error in this case. Thus, we find that a memorandum decision is the appropriate disposition for this case under Rule 21 of the Revised Rules of Appellate Procedure.

This case arises from a dispute between MTR and the respondent, Edson R. Arneault ("Arneault"), related to his former employment with MTR. Arneault was employed by MTR in a variety of capacities. He last served as CEO for the company, stepping down in 2008. When Arneault left the company in 2008, he entered into a deferred compensation agreement and consulting agreement with MTR. In 2009, Arneault filed a suit against MTR, alleging claims arising from the contracts and other tort claims related to his deferred compensation agreement. This lawsuit was ultimately resolved, and Arneault and MTR entered into an agreement ("Settlement Agreement") that was incorporated into an order of the Circuit Court of Hancock County entered March 1, 2010.

1

The Settlement Agreement and order contained a clause stating, "[A]ny dispute arising from this agreement shall be interpreted pursuant to the laws of West Virginia and venue shall exclusively vest with the Circuit Court of Hancock County, West Virginia." The Settlement Agreement also contained a confidentiality clause requiring that neither party disclose the terms of the underlying agreement. A portion of the agreement also provided that Arneault would be allowed access to non-privileged, non-confidential documents that he might need in dealing with claims by state bodies, law enforcement agencies, administrative agencies or in the course of obtaining additional gaming licenses.

On April 15, 2011, Arneault and co-plaintiffs filed an action based upon 42 U.S.C. § 1983 ("Civil Rights Case") in the United States District Court for the Western District of a Pennsylvania ("District Court") against MTR and other defendants. This complaint was later amended to include additional plaintiffs. Arneault's allegations against MTR and the other defendants included violations of his federal civil rights that resulted in the denial of his request for a Pennsylvania gaming license. Actions alleged to have been performed by MTR included failure to provide necessary documentation within its control to gaming licensing authorities that hampered and hindered Arneault's attempts to acquire a gaming license in Pennsylvania.[1]

On September 26, 2011, MTR instituted a separate civil action in the District Court against Arneault. The complaint alleged six separate counts, including the breach of the consulting agreement; three breaches of the settlement agreement; tortious interference with contract; and one violation of Pennsylvania's Uniform Trade Secret Act. Of these six counts, three directly alleged breach of contract claims arising from the settlement agreement and were contained in Counts 2, 4 and 5[2] of MTR's complaint.

On November 11, 2011, Arneault filed a Petition for Rule to Show Cause in the Circuit Court of Hancock County alleging that MTR had violated the forum selection

---

[1] In the course of renewing his gaming license in Pennsylvania, Arneault received an initial recommendation that he was unsuitable for a gaming license and that his current license should not be renewed. Arneault claimed that the investigating agency that made this negative recommendation based its decision upon false allegations and other falsehoods. Therefore, he had to appear before the full gaming board with documentation and other evidence to rebut the initial negative recommendation. Arneault alleged that as a result of media reports on the licensing issue, his reputation in the gaming industry was damaged and he lost business opportunities in the industry.

[2] The complaint itself used Roman numerals. We have substituted the Arabic numerals for Roman numerals.

2

clause of the underlying settlement agreement by instituting this action in the United States District Court for the Western District of Pennsylvania. MTR responded, alleging that Arneault had himself violated the forum selection clause by filing the Civil Rights Case in the District Court.

MTR alleged that the new action was derivative of the settlement agreement that selected Hancock County, West Virginia, as the venue for any court action. Arneault disputed this contention, arguing that the relief requested by him contained no claims arising from the agreement, unlike the three counts of the complaint filed by MTR that were based upon language in the agreement itself.

The circuit court heard the parties' arguments on January 25, 2012. By order entered nunc pro tunc to January 25, 2012, ("contempt order") the circuit court found that MTR and Arneault had entered into a Settlement Agreement containing a forum selection clause. The circuit court concluded that the forum selection clause was violated by MTR when it filed a civil action in the District Court. The circuit court concluded that counts 2, 4 and 5 arose directly from the Settlement Agreement. The lower court also found that Arneault did not violate the forum selection clause in the underlying settlement agreement when he filed his action in federal court because his claims did not arise from the settlement agreement. The circuit court further found that Arneault's claims could only be pursued in the District Court.

The circuit court further denied MTR's claim that a ruling by the District Court on any of the federal suits could lead to inconsistent results.[3] The court found MTR to be in

---

[3] This Court accepted MTR's Petition for Writ of Prohibition on August 30, 2012. On September 27, 2012, the District Court entered a 37-page order that granted in part, and denied in part, Arneault's motion to dismiss MTR's suit against him. The District Court ruled, *inter alia*, that Counts 1, 2, 4 and 5 of MTR's suit against Arneault were dismissed pursuant to Rule 12(b)(6), but without prejudice so that MTR could assert the claims in the Circuit Court of Hancock County. MTR's claim for alleged violations of Pennsylvania's Trade Secrets Act, contained in Count 6, was dismissed with prejudice as it was barred by the settlement agreement. The only claim left was contained in Count 3 of MTR's complaint, alleging intentional interference with a contractual relation.

MTR made similar arguments in the District Court proceeding regarding Arneault's federal action against it, positing that Arneault's claims arose from the settlement agreement. The District Court order stated that "Arneault's decision to commence the Civil Rights Action in this Court" was not "so inherently contradictory to the . . . forum selection clause as to manifest a clear intent on the part of Arneault to relinquish his rights under that provision." The District Court order contains findings of fact and conclusions of law similar to the conclusions of the circuit court in regard to

(continued . . . )

3

contempt of the settlement agreement by filing the lawsuit in federal court, and it imposed a $500 per day fine, beginning January 25, 2012, until MTR dismissed Counts 2, 4 and 5 of its federal court complaint against Arneault. While MTR never dismissed these counts, the District Court did dismiss those counts by order entered September 27, 2012.

This matter is before the Court on a petition for writ of prohibition challenging the circuit court's issuance of a contempt order against the petitioners for violations of the underlying settlement agreement and order. We have held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencnidiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). Furthermore, we have provided a clear statement of what this Court must find before a writ of prohibition is issued in a case where the claim being made is that the lower court exceeded its lawful powers.

> In determining whether to entertain and issue the writ of prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceed its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With these standards in mind we address the petitioner's request for a writ of prohibition.

---

whether MTR's complaint arose from the settlement agreement, and whether Arneault waived his contractual right to enforce the forum selection clause by having filed the Civil Rights Action in federal court.

4

Pursuant to our standard of review, we must weigh the five factors in syllabus point 4 of *Hoover* in determining whether a writ of prohibition should issue. We can quickly dispose of the fourth and fifth factors, which involve repeated errors by the courts and issues of first impression. Neither factor is discussed by the parties, and upon our review of the record and the controlling law, we find that the case does not involve often repeated errors, nor does it involve an issue of first impression. Therefore, only the first three factors of *Hoover* are relevant.

The first and second *Hoover* factors are related to the availability of an effective appeal. We have long held that a writ of prohibition is not a substitute for an appeal. Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."). However, to proceed with an appeal, the order must be appealable. To appeal an order, the order must be final:

> Under W. Va. Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Syl. pt. 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995).

MTR argues that the contempt order is not final because counts 2, 4, and 5 of its federal suit were not dismissed at the time of the argument, and thus a sanction had not yet been imposed. MTR cites to *Guido v. Guido*, 202 W. Va. 198, 202, 503 S.E.2d 511, 515 (1998), for the proposition that until a sanction for contempt is imposed, a judgment is not final. We agree with MTR and find that *Guido* is controlling, but we find that the facts in the record lead us to the opposite result reached by MTR: The contempt order is final. The order clearly imposes a sanction: "Beginning January 25, 2012, a fine in the amount of Five Hundred Dollars ($500) per day shall be imposed on Defendant/Respondent MTR until such time as it dismisses Counts [2], [4], and [5] . . . ." Contrary to MTR's assertion, a sanction has been imposed, and imposition of the sanction is not dependent on MTR first dismissing counts 2, 4, and 5. Instead, the sanction was set to continue until those counts were dismissed. Therefore, under our analysis of the first *Hoover* factor, an appeal of the contempt order was available to MTR. This factor weighs against MTR.

The second *Hoover* factor also weighs against MTR. Any injury suffered by an erroneous ruling of the circuit court would have been correctable on appeal.

5

The third *Hoover* factor requires the Court to determine whether the circuit court committed clear error when it concluded that MTR violated the forum selection clause and filed its District Court action against Arneault. MTR alleges four grounds of error in the underlying order: (1) the circuit court disregarded its own findings that Arneault's Civil Rights Action arose from the Settlement Agreement; (2) the circuit court failed to find that Arneault waived his right to enforce the forum selection clause in the Settlement Agreement and is estopped from arguing otherwise; (3) the circuit court erroneously found that Arneault's dismissal of one count of the Civil Rights Action cured his breach of the forum selection clause in the Settlement Agreement; and (4) the circuit court erred by declining to abstain from ruling until the District Court entered its ruling on the exact issues.

The first argument in support of MTR's request for a writ of prohibition is that the circuit court erred in finding that Arneault's Civil Rights Action did not arise from the Settlement Agreement. The allegations against MTR in the Civil Rights Action involve the deprivation of Arneault's federal civil rights in the course of his attempts to renew his gaming license from the Pennsylvania Gaming Board. Of the eleven counts in the Civil Rights Action, only two counts involved MTR. One of those two counts was dismissed by Arneault. In the remaining count, Arneault alleged that MTR and its employees inhibited, delayed and "stonewalled" Arneault in his attempts to obtain documents and depositions of MTR employees that were relevant to his licensing hearing. Arneault claimed that he ultimately had to obtain the majority of the needed documentation from other sources, at great effort and expense. Arneault further alleged that MRT and its counsel, as well as other defendants in the Civil Rights Action, intentionally withheld these documents.

MRT argues that this claim arises from the Settlement Agreement because the Settlement Agreement required MTR to permit Arneault access to documentation and information that he may need to defend his Pennsylvania gaming license. Arneault argues that although the Civil Rights Claim involves information and documents that the Settlement Agreement requires MTR make available to Arneault, the relevant count in the Civil Rights Claim does not arise from the Settlement Agreement.

We agree with Arneault. The fact that the underlying Settlement Agreement required that information and documentation be available to Arneault does not necessarily mean that any future claim involving or needing any documentation necessarily arises from the Settlement Agreement. The Settlement Agreement addressed claims made by Arneault in the course of his leaving his position at MTR, and the claims in the original state suit related to MTR's failure to abide by the deferred compensation agreement and consulting agreement. Arneault's relevant Civil Rights Claim, which involves his ability to defend his Pennsylvania gaming license, does not arise from a settlement agreement focused on deferred compensation and consulting agreements.

6

MTR's second argument—that Arneault waived the forum selection clause by filing the District Court action in the Western District of Pennsylvania instead of in Hancock County, West Virginia—must necessarily fail based on the foregoing. Because Arneault's claims do not arise from the Settlement Agreement, his claims could not constitute waiver of the forum selection clause. Judge Recht's ruling was not clear legal error on this ground, and cannot be used to issue a writ of prohibition.

The third argument advanced by MTR for the issuance of the writ of prohibition is that the circuit court allowed Arneault to cure his supposed breach of the Settlement Agreement by dismissing one count of the Civil Rights Action. MTR posited that it was error for the circuit court to allow Arneault to dismiss the count. MTR does not cite to any law supporting its proposition that allowing Arneault to dismiss the offending count is error on the part of the circuit court. We can find no law supporting MTR's argument, and therefore we find that the circuit court did not commit error with regard to this issue.

Finally, MTR alleges that it was error for the circuit court to risk issuing a ruling inconsistent with the District Court action. We disagree. Because the circuit court's ruling in the contempt order was based on MTR's compliance with the court's March 1, 2010, order adopting the Settlement Agreement, the case was solely within the circuit court's jurisdiction. Regardless, this issue has been rendered moot: While at the time that this matter was briefed and presented to this Court the matters were undecided, the District Court has since ruled in a manner consistent with the circuit court's order. Thus, we find that the circuit court did not err by issuing the contempt order.

We conclude that the circuit court's contempt order does not contain any instance of clear error, and that the third *Hoover* factor weighs against MTR. In fact, all three relevant Hoover factors weigh against MTR. Therefore, we find that the circuit court did not exceed its legitimate powers by issuing the contempt order, and we deny the requested writ of prohibition.

Writ Denied.

**ISSUED: June 18, 2013**

**CONCURRED IN BY:**
Chief Justice Brent D. Benjamin
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7